[No. B043683. Second Dist., Div. Five. Feb. 11, 1992.]

THE PEOPLE, Plaintiff and Respondent, v.
VICTORIO DOMINGUEZ GIL, Defendant and Appellant.

**[Opinion certified for partial publication.*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts II through VI.

## Counsel

Richard Power, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Edward T. Fogel, Jr., Assistant Attorney General, Noreen F. Berra and Jaime L. Fuster, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

ASHBY, J.—By jury trial appellant Victorio Dominguez Gil was found guilty as charged of five counts of forcible lewd conduct on a child under the age of 14. (Pen. Code, § 288, subd. (b).) He was sentenced to a term of 18 years in state prison.

Appellant lived in the same house as the two victims, Flor T. and Sandra P. Appellant lived with Flor's mother (Alfa) by whom he fathered Flor's baby sister. Alfa's sister (Carolina) and her family also lived in the house. Sandra was Carolina's daughter and Flor's cousin.

Counts III, IV, and V involved Sandra. All three of these crimes occurred near her eleventh birthday, which was in May 1987. Counts I and II involved Flor. The crime in count II also occurred around May 1987, when Flor was 9. The other (count I) occurred near August 1988, when Flor was 10.

### FACTS

We recite the facts in accordance with the usual rule that an appellate court views the evidence in the light most favorable to the judgment. (*People v. Barnes* (1986) 42 Cal.3d 284, 303 [228 Cal.Rptr. 228, 721 P.2d 110].)

### *Sandra (Counts III, IV, V)*

Around May of 1987 Sandra went into Flor's room to look for her sister's bottle. Appellant was hiding behind the door of Flor's bedroom. As Sandra began to leave, appellant "pulled me in back of the door and he started touching me on my chest." Appellant began rubbing her breasts in a circular motion. While appellant was rubbing Sandra's breasts he kept repeating that if she told anyone, "he was going to hurt somebody in my family, my mom." Sandra was afraid and did not tell.

Another day around May 1987 (a day Sandra was going to the hospital for an unrelated prior injury), appellant put his penis in her vagina. This also happened in Flor's bedroom. Appellant grabbed Sandra by the arms and threw her onto a bed. Appellant locked the bedroom door and gagged Sandra with a sock or cloth he put in her mouth. He pulled his zipper down, took out his penis and shook it back and forth. Sandra was on the bed; she was shaking or kicking but appellant was on top of her. He pulled her underwear to the side and partly penetrated her vagina with his penis. She felt something hard, and it hurt. Appellant again told Sandra not to tell anyone or he would hurt someone in her family. When appellant stopped there was

something white, like milk, on his penis. Appellant repeated the threat to hurt someone in Sandra's family, and she was scared.

On a third occasion also around May of 1987 Sandra and Flor were on Flor's bed watching television. Appellant, who had been asleep on the floor, got up, closed the bedroom door and locked it. Appellant grabbed Sandra and threw her onto the other bed in the room. Flor told appellant to leave Sandra alone, but appellant pushed Flor away. Appellant put a cloth in Sandra's mouth and pulled her pants partly down. He put his penis partly in her vagina; it hurt. She felt something wet and afterwards noticed something white on her pants or underwear. Appellant also put a finger in her vagina. Appellant twice stated that if Sandra told anyone he would do something to her family.

In August 1988, after appellant had moved out of the house, Sandra told the police appellant had molested her. This disclosure occurred when Detective Berglund came to the house to interview Flor. Sandra approached Berglund and volunteered that appellant had bothered her also.

On August 12, 1988, Dr. Vera Stanincova, a board-certified pediatrician in charge of the suspected child abuse and neglect team at Olive View Hospital, examined Sandra. Sandra had scar tissue in the posterior fourchette area. Such injury to the posterior fourchette is consistent only with attempted penetration by a penis or other object and is not associated with sports injuries. The absence of a hymenal tear was not inconsistent with this diagnosis.

### Flor (Counts I, II)

One time in spring (or May) 1987, appellant came into Flor's bedroom. Flor had come out of the shower and was putting on a jumpsuit. Appellant closed the bedroom door. He put a cloth in her mouth, tied her hands with a rope, and pushed her onto the bed. Appellant unzipped Flor's jumpsuit and put his hands on her breasts, moving his hands around. Appellant did not remove her pants but placed his penis on her pants which covered her vagina. Appellant then moved aside her underwear and put his finger on or inside her vagina. Appellant stopped when Flor's mother was heard to arrive home. Appellant untied Flor, removed the cloth from her mouth, and told her not to tell anyone. Flor did not tell, because appellant had said if she told anyone he would hurt Flor's mother or little sister.

Around August 1988, Flor went into her room with soup for her baby sister. Appellant closed and locked the bedroom door. Flor tried to jump out

the window but appellant grabbed her and threw her onto a bed. Appellant put a cloth in her mouth and told her if she yelled he would do something to her. Appellant pulled Flor's skirt up then pulled her underwear down toward her knees. He then put his penis against her vagina and it hurt. He also touched her vagina with his finger. He said if she told anyone he would do something to her mother and take her sister away.

Not long after this incident Flor's mother observed blood on Flor's clothing. When her mother indicated she would take Flor to a doctor, Flor told her mother what appellant had done. Flor also told Detective Berglund when he came to the home to interview her.

On August 5, 1988, Flor was examined by Dr. Smith at a hospital emergency room. Hospital records indicated that Dr. Smith found no tears or scars and attributed Flor's vaginal bleeding to first menstruation. In the opinion of Dr. Stanincova at trial, the absence of tears or scars was consistent with relatively gentle penetration or attempted penetration with a finger or a penis.

## Defense

Appellant testified, denying that he committed any of the charged crimes.

He presented further defenses through testimony of himself and others, to the effect that Flor's mother was jealous and vindictive about his seeing other women, therefore she might have encouraged the children to make charges against appellant.

## Contentions

Appellant contends: (1) the court lacked jurisdiction, and appellant was denied notice of the charges, because the evidence adduced at trial involved offenses not shown by the preliminary hearing; (2) the evidence is insufficient to support conviction of forcible lewd conduct (Pen. Code, § 288, subd. (b)) on count III; (3) the court erred in failing to instruct sua sponte on nonforcible lewd conduct (Pen. Code, § 288, subd. (a)) as to count III; (4) the court erred in admitting evidence of other acts of appellant (Evid. Code, § 1101); (5) the court erred in denying appellant's motion for severance; and (6) the court erred in excluding as cumulative, collateral or remote, certain evidence offered by appellant.

Finding no merit to these contentions we affirm.

# I

## NOTICE

 Appellant discusses in minute detail the testimony of the two child victims at trial. He contends the trial testimony contains inconsistencies, contradictions, confusion and elaboration when compared to the testimony at the preliminary hearing. From this, appellant argues the incidents testified to at trial were not the same ones testified to at the preliminary hearing. He contends he was tried on charges not shown by the evidence at the preliminary hearing, the trial court lacked jurisdiction to try him, and he was deprived of due process and fair notice of the charges. There is no merit to these arguments.

Unlike authorities cited by appellant,[1] this is not a case of a trial court lacking jurisdiction to proceed because an information charges offenses not shown by the evidence at the preliminary hearing. The evidence at the preliminary hearing clearly supported five counts of lewd conduct, two involving Flor and three involving Sandra. Nor is this case like *People* v. *Pitts* (1990) 223 Cal.App.3d 606, 908-914 [273 Cal.Rptr. 757] cited by appellant, where, as to some of numerous counts of lewd conduct, there was absolutely no evidence at the preliminary hearing of the specific sexual contact between the specific named perpetrators and victims expressly charged in the information.

Contrary to appellant's contention that "the dates . . . were way off" there was a strong correspondence between the preliminary hearing testimony and dates described in the trial testimony when viewed in the light most favorable to the judgment. (*People* v. *Johnson* (1980) 26 Cal.3d 557, 576 [162 Cal.Rptr. 431, 606 P.2d 738, 16 A.L.R.4th 1255].) At the preliminary hearing there was testimony by Flor, consistent with the judgment, that the first incident occurred in May 1987 and the second in August 1988. Similarly, there was testimony by Sandra at the preliminary hearing that the three incidents occurred around May 1987. Appellant points out that at trial, at the close of the prosecution case, the People moved to amend the amended information as to time periods in light of some confusion, contradiction or inconsistencies in the children's trial testimony. The amendments permitted by the trial court were minor, however, and only slightly extended the time ranges alleged in the information. (See *People* v. *Obremski* (1989) 207

---

[1](*Jones* v. *Superior Court* (1971) 4 Cal.3d 660, 664-665 [94 Cal.Rptr. 289, 483 P.2d 1241]; *People* v. *Firestine* (1968) 268 Cal.App.2d 533, 536-537, fn. 3 [74 Cal.Rptr. 168]; Pen. Code, § 739.)

Cal.App.3d 1346, 1354 [255 Cal.Rptr. 715]; *People* v. *Fortanel* (1990) 222 Cal.App.3d 1641, 1644-1646 [272 Cal.Rptr. 657]; Pen. Code, § 955.)[2]

As to the substance of the offenses, and unlike *People* v. *Pitts, supra,* 223 Cal.App.3d at pages 908-914, the testimony at trial and preliminary hearing corresponded. Sandra testified consistently at the preliminary hearing that the first incident involved appellant's grabbing her and touching her breasts. She testified at the preliminary hearing about the second incident, which involved appellant's throwing her onto a bed and partly penetrating her vagina with his penis and his finger. She testified at the preliminary hearing about the third occasion which involved appellant's pulling her skirt up and her underwear down and putting his penis in her vagina. Similarly Flor testified at the preliminary hearing about the two incidents, describing the sexual contacts in generally the same terms as at trial. Although her testimony at trial was somewhat inconsistent, suggesting an inference she may have confused certain details from one incident to the other, the jury could evaluate these inconsistencies because Flor's preliminary hearing testimony was read to the jury.

Inconsistencies and contradictions during the course of thorough cross-examination of child witnesses at trial is not persuasive of appellant's contention that the incidents at trial were completely different from the incidents described at the preliminary hearing. The inconsistencies went to the weight and credibility of the testimony, not to the question of notice claimed by appellant. (See *People* v. *Jones* (1990) 51 Cal.3d 294, 320 [270 Cal.Rptr. 611, 792 P.2d 643].)

██ Furthermore, appellant did not object below that the evidence adduced at trial showed offenses completely different from the offenses at the preliminary hearing. (*People* v. *Newlun* (1991) 227 Cal.App.3d 1590, 1604 [278 Cal.Rptr. 550].) Although he objected to expanding the range of dates, he did not contend the offenses were not the same ones shown at the preliminary hearing. Appellant's failure to object waives the claim that he lacked adequate notice of the charges. (*People* v. *Newlun, supra.*)

██ Notwithstanding appellant's present claim that certain "details were way off," it is unlikely appellant's ability to defend was prejudiced; his defense was not a specific alibi but a denial that molestations occurred at all. (See *People* v. *Jones, supra,* 51 Cal.3d at p. 319; *People* v. *Moreno* (1989) 211 Cal.App.3d 776, 788 [259 Cal.Rptr. 800].)

[2]Count I originally alleged, "On or about August 2, 1988"; it was amended to "On or between June 1, 1988 and August 2, 1988." Count II originally alleged, "On or between January 1, 1987 and July 1, 1987"; it was amended to change the ending date to September 1, 1987. Counts III, IV, and V originally alleged, "On and between January 1, 1987 and July 1, 1987"; they were amended to change the ending date from July 1 to July 31.

II-VI*

. . . . . . . . . . . . . . . . . . . . . . . . . . . .

## VII

### DISPOSITION

The judgment is affirmed.

Turner, P. J., and Boren, J., concurred.

---

*See footnote, *ante*, page 653.