Filed 2/26/16 P. v. Garcia CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>RUDY ART GARCIA, JR.,<br><br>    Defendant and Appellant. | G052149<br><br>(Super. Ct. No. RIF1200175)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Riverside County, Mac R. Fisher, Judge.  Affirmed in part and reversed in part, with directions.

Carl Fabian, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Barry Carlton and Minh U. Le, Deputy Attorneys General, for Plaintiff and Respondent.

\*          \*          \*

A jury convicted Rudy Art Garcia, Jr., of two counts of lewd or lascivious acts against his cousin, John Doe 1, before Doe 1 turned 14 years old (Pen. Code, § 288, subd. (a); counts 1 & 2; all further statutory references are to this code), two additional counts of lewd acts when Doe 1 was under 16 years old (§ 288, subd. (c); counts 3 & 4), and contacting a minor, Doe 1's brother, John Doe 2, with the intent to commit a sexual offense (§ 288.3, subd. (a); count 9). The jury found on counts 1 and 2 that defendant engaged in substantial sexual conduct (§ 1203.066, subd. (a)(8)), precluding probation or a suspended sentence (*ibid.*). The trial court sentenced defendant to 12 years in prison, comprised of eight years on count 1, two consecutive years as one-third the middle term on count 2, and three consecutive eight month terms, each being one-third the middle term on counts 3, 4, and 9.

Defendant contends we must set aside his conviction on count 1 because the amended information charging that offense fell outside the statute of limitations. But he acknowledges the original complaint was timely, and concedes the amended information related back to the timely complaint *if* the prosecutor intended to charge a particular instance of abuse (the "bubble gum oral copulation incident") in the initial complaint. Because the record supports the conclusion that incident formed the basis for count 1 in the original complaint, the amended information related back to it and did not run afoul of the statute of limitations.

Defendant's other challenges, however, have merit. As we explain, the trial court erroneously allowed the prosecutor to file a second amended information after the close of evidence to add an alleged period of abuse on count 2 that the testimony at the preliminary hearing unequivocally disavowed as a basis for prosecution ("while he lived at the Ashwood Apartments[,] there was no sexual contact"). Although sex abuse allegations may be pleaded generically (*People v. Jones* (1990) 51 Cal.3d 294 (*Jones*), there are due process limits (*id.* at p. 317), which the belated amendment here exceeded.

As to defendant's sentencing challenges, the Attorney General concedes the abstract of judgment and minute order must be corrected to delete a one-year concurrent term under section 1203.066 that the trial court did not impose, and the eight-month term imposed on count 9 must be corrected to a four-month term. As we explain, however, these sentencing issues are mooted by the necessity of resentencing on remand.

I

FACTUAL AND PROCEDURAL BACKGROUND

A. *Bubble Gum Incident — Count 1*

In late 2002 or early 2003, eight-year-old Doe 1 lived with his family in a house on Mark Twain Road. Defendant, who at age 23 was 15 years older than Doe 1, entered a closet with his young cousin and instructed the boy to pull down his pants. Defendant then pulled down his own pants, gave Doe 1 a piece of bubble gum, and instructed Doe 1 to use the bubble gum like a condom around defendant's penis. Defendant had Doe 1 orally copulate him in this manner until defendant ejaculated.

B. *Other Alleged Lewd Conduct While Doe 1 was Under 14 years old — Count 2*

At the preliminary hearing, Detective Lance Colmer testified defendant engaged in a continuing pattern of substantial sexual abuse against Doe 1 while Doe 1 lived at the home on Mark Twain Road, until Doe 1 and his family moved in 2004.

But at trial, Doe 1 testified the abuse occurred at a different location and time frame *after* the move. Specifically, sometime in the fall of 2004, Doe's family moved from the Mark Twain Road residence to an apartment in the Ashwood complex on Hemlock Street in Moreno Valley. It was only when Doe had moved to the Ashwood Apartments that he and defendant engaged in any mutual masturbation or touching of genitals. Doe explained at trial that after he moved to the new apartment with his family, defendant moved into his own apartment near a movie theater. There,

3

Doe 1 sometimes visited defendant, as often as every other weekend, and he and defendant would mutually masturbate each other, sometimes in the bed or in the bathroom. They also took showers together and washed each other's genitals.

Sometime in 2006, Doe 1 and his family moved to an apartment on Frederick Street. Doe 1 was in the sixth grade and still under 14 years old. According to Doe's trial testimony, defendant sometimes visited him at the Frederick Street residence and they masturbated each other numerous times.

C.   *Lewd Conduct while John Doe 1 was 15 or 16 years old — Counts 3 and 4*

Sometime around the end of 2008 to the beginning of 2009, after Doe 1 had turned 14, defendant moved into the same Frederick Street apartment complex, but in a different unit. Doe testified that he and defendant engaged in oral sex for the first time since the bubble gum incident, and defendant also groomed him for anal sex. On several occasions when they were alone, defendant requested anal sex and explained, "It's just like having sex with a girl." They engaged in anal sex in Doe 1's bedroom, where defendant slept in bed with him, and when defendant showered with him. The abuse was nearly constant, with oral copulation twice a day after school, mutual masturbation on a continual basis, and anal sex more than once a week. Defendant continued abusing Doe 1 until he was 16 years old, and only ceased when defendant moved out of state in 2010.

D.   *Contact with John Doe 2 to Commit a Sexual Offense — Count 9*

On February 10, 2011, while defendant was living in Washington state, he e-mailed John Doe 2 and solicited him to send a video of himself ejaculating. Doe was 15 at the time and defendant was 31 years old. Doe 2 did not send defendant a video.

E.   *Pretext Call and Defense*

In late 2011, when Doe 1 was in 12th grade, he told his mother about the sexual abuse, which she reported to the police. On November 30, 2011, the police had

4

Doe 1 make a "pretext call" to defendant. During the call, investigators heard defendant admit to "molest[ing]" Doe 1 as "a little kid" and that he "kept going" during anal sex with Doe 1 though Doe 1 told him it hurt. When Doe 1 brought up other sexual incidents, defendant claimed "I did what I did to you" because "I was in love with you" and someone had told him "that if I sleep with somebody, our spirits can be one." He acknowledged, "yeah, I was ignorant," but warned Doe 1 his life would be "screwed," he would go to jail, and his wife would leave him if Doe 1 reported the abuse. He threatened Doe 1, "If you don't forgive me, then God won't forgive you," and also threatened to take his own life.

Defendant testified his father masturbated him as a child and that an adult male sodomized him at a church camp. According to defendant, he did not molest Doe 1 until the child was 14 years old.

II

DISCUSSION

A. *Statute of Limitations*

Defendant argues the trial court erred by allowing the prosecutor to file an amended information on the first day of trial, changing the date range of the "lewd and lascivious act" (§ 288, subd. (a)) alleged in count 1 from July 2, 2003 through July 2, 2004, to include a year earlier, from July 3, 2002, through July 2, 2004. Because the period added by the amendment — July 2002 through July 2003 — is more than 10 years before the date the prosecutor filed the amended information on September 16, 2013, defendant contends the 10-year statute of limitations in effect at the time precluded the amendment. (See former § 803, subd. (i)(2), as amended by Stats. 2001, ch. 235, § 1, pp. 2121-2126, eff. Jan. 1, 2002 to Sept. 28, 2002; *People v. Ortega* (2013) 218 Cal.App.4th 1418, 1429.)

The date the prosecutor amended the information, September 16, 2013, is also outside a former alternative limitations period that was in effect for otherwise time-

5

barred abuse, i.e., within one year of a report of abuse to a California law enforcement agency by a person under age 21. (See former § 803, subd. (h), as amended by Stats. 2001, ch. 235, § 1, pp. 2338-2342, eff. Jan. 1, 2002 to Sept. 28, 2002.) Specifically, Doe 1 reported the abuse to authorities in October 2011, and within a year the prosecutor filed an initial complaint alleging the abuse in February 2012. The complaint alleged the abuse began in July 2003, and this allegation remained unchanged in several amendments to the complaint and in an initial information. As noted, the date the alleged abuse commenced was not pushed back to July 2002 until the prosecutor filed the amended information on September 16, 2013.

Defendant acknowledges that the date the initial complaint was filed, in February 2012, was timely under both the 10-year statute of limitations, and it is also timely under the alternative period of a year from a report of abuse as a juvenile. But as defendant correctly points out, the amended information filed on September 16, 2013, does not automatically relate back to the filing date of the initial complaint. An initial filing date does not operate "as a categorical exception to the running of the applicable limitation period for the entire class of same or similar criminal acts allegedly committed by a defendant against the same victim during the same time frame as an offense charged in a pending prosecution." (*People v. Terry* (2005) 127 Cal.App.4th 750, 769.) Rather, it "suspends the running of the statute of limitation only for the conduct underlying a charged offense but does not stop the running of the [limitations period] on completely separate instances of criminal conduct, even when acts were proven by 'generic' testimony." (*Ibid.*)

Accordingly, "a critical inquiry must be made: is the amendment to correct a defect or insufficiency in the original complaint or is the amendment to charge an offense not attempted to be charged by the original complaint? 'If the amendment falls in the former category, it relates back to the date of the original filing of the information and has the effect of tolling the running of the statute of limitations from the

6

date of the original information. [Citation.] If the amendment falls in the latter category, the . . . statute of limitations on the charges has run' [citation] and the charges are barred." (*Harris v. Superior Court* (1988) 201 Cal.App.3d 624, 627-628 (*Harris*).)

As a preliminary matter, the Attorney General asserts defendant forfeited his statute of limitations challenge by failing to raise it below. (Cf. *People v. Gil* (1992) 3 Cal.App.4th 653, 659 [waiver where defendant did not assert inadequate notice of amended charges].) Defendant contends an objection would have been futile because the trial court rejected his objection to other amendments; alternatively, he asserts his trial attorney rendered ineffective assistance of counsel ("IAC") by failing to make a specific objection based on the limitations period.

We reach the merits of defendant's limitations challenge because doing so resolves his claims in one stroke. Simply put, whether or not an objection would have been futile, defendant's limitations challenge fails because the record shows that count 1 of the amended information related back to the same act charged in count 1 in the complaint. Defendant's IAC claim therefore also lacks merit. (See *People v. Cox* (1991) 53 Cal.3d 618, 656 [challenge fails where reviewing court finds no prejudice from counsel's alleged failures].)

Defendant contends no evidence supports the conclusion count 1 in the amended information referred to the same underlying conduct charged in count 1 in the complaint, and therefore related back to it. He surmises the offense charged in the amended information must have been a new one, and therefore fell outside any applicable statute of limitations.

But the prosecutor explained at the outset of trial that her purpose in amending the information was to ensure consistency with "the testimony at [the] preliminary hearing." At that hearing, Detective Colmer identified in the period before Doe 1 turned 14 a specific, initial instance of abuse (the bubble gum incident) followed by a continuing pattern of abuse at that residence ("it continued to be oral sex, mutual

7

masturbation, showering together, and anal sex"). The initial complaint and all subsequent amendments pleaded counts 1 and 2 generically as lewd and lascivious acts, without identifying the basis of either. But the division into two counts strongly suggests one was based on the bubble gum incident, presumably count 1, because the abuse began with that incident, and therefore the continuing pattern of abuse fell within count 2. Although the testimony at the preliminary hearing showed the abuse started with the bubble gum incident "in [the] third grade when [Doe 1] was around the age of eight or nine," which would have been in 2002, an amended information at trial was necessary because the initial complaint and subsequent amendments identified the charging period as beginning in 2003.

It appears the original complaint simply miscalculated the start of Doe 1's third grade year as 2003 instead of 2002, just as the complaint also misidentified Doe 1 as a Jane Doe instead of John Doe. The prosecution corrected the latter mistake promptly in an amended complaint. But such clerical corrections do not amount to charging a new offense, and therefore do not prevent an amendment from relating back to a complaint filed within the statute of limitations. (*Harris*, *supra*, 201 Cal.App.3d at pp. 627-628.)

Defendant does not dispute he had notice of the bubble gum incident. Instead, defendant seizes on the prosecutor's use of the word "touching" in seeking to amend the information with the 2002 dates for counts 1 and 2 based on "the touching start[ing] in the [third] grade." Defendant suggests that in using the word "touching," the prosecutor must have been referring to the generic pattern of abuse because she did not refer to the bubble gum incident specifically. Therefore, defendant reasons that count 1 of the amended information does not *necessarily* have the same basis as count 1 in the original complaint, and thus the amendment charges a new offense violating the limitations period.

Defendant's argument is unpersuasive for several reasons. First, in suggesting count 1 of the amended information charges some unspecified new offense,

8

defendant assumes the prosecutor did not intend to charge the bubble gum incident at all. If true, we would not expect to see evidence of this incident at trial. It is far more likely, as noted, that the prosecutor intended count 1 of the amended information and the original complaint to refer to the bubble gum incident, since it garnered special mention in both the pretext call and the preliminary hearing testimony. At closing argument, the prosecutor specified count 1 referred to the bubble gum incident. Defendant offers no alternative suggestion what the basis of the allegedly brand-new charge in the amended information might be.

Second, defendant's parsing of the word "touching" as referring *only* to the pattern of abuse contradicts the meaning of the term, which reasonably refers to both the illicit touching in the bubble gum oral copulation incident and the later general abuse. Notably, the prosecutor amended *both* counts 1 and 2 to add the 2002 date, presumably because the evidence at the preliminary hearing suggested both the bubble gum incident and the pattern of general abuse may have begun as early as 2002. Third, while the trial court did not specify its reasoning for approving the amended information, we must view the record and make all inferences in favor of the judgment. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) We see nothing in the record to suggest count 1 of the amended information charged a new offense; consequently, defendant's statute of limitations claim is without merit.

B. *Due Process*

In contrast, defendant's due process challenge requires reversal of his conviction on count 2 because the trial court erroneously allowed the prosecution after the close of evidence to amend the information and extend the charging range on that count an additional two years (from 2004 to 2006). Notably, the amendment extended the charging range *into a period of time the testimony at the preliminary hearing disavowed any abuse occurred.*

9

The Attorney General again asserts forfeiture because defendant apparently interposed only a general objection to the amendment, rather than the due process grounds he now asserts. The record, however, shows defendant objected, but does not illuminate the basis for defendant's objection. The record reflects only the trial court's ruling that "I'm going to grant the motion over the objection of the defense." In any event, it appears the trial court may have believed there was no obstacle to amending count 2 so long as Doe 1 was still under the age of 14 through the extension of charges into 2006. Doe was still under 14 in 2006, so an objection would have been futile.

Due process does not prohibit generic pleading of sex crimes, but "the 'modern answer' to . . . how [a] defendant can prepare a defense against nonspecific molestation charges 'is that, at a minimum, a defendant must be prepared to defend against all offenses of the kind alleged in the information *as are shown by evidence at the preliminary hearing* to have occurred within the timeframe pleaded in the information.'" (*Jones*, *supra*, 51 Cal.3d at p. 317, italics added.) The information "has a 'limited role' of informing [the] defendant of the kinds and number of offenses," while "'the time, place, and circumstances of charged offenses are left to the preliminary hearing transcript,' which represents 'the touchstone of due process notice to a defendant.'" (*Id.* at p. 312.) "An indictment or accusation cannot be amended so as to change the offense charged, nor an information *so as to charge an offense not shown by the evidence taken at the preliminary examination*." (§ 1009, italics added.)

Two cases exemplify reversal is required where amendments effectively add new offenses to an information, based on incidents not shown at the preliminary hearing. In *People v. Graff* (2009) 170 Cal.App.4th 345 (*Graff*), the amendment added two specific instances of masturbation (*Graff*, at pp. 351, 367), and in *People v. Dominguez* (2008) 166 Cal.App.4th 858 (*Dominguez*), the amended date range included a particular incident in which the defendant allegedly took the victim's car without permission (*Dominguez*, at pp. 862, 866). In each case, the amendment required reversal

10

on due process grounds for lack of notice of what amounted to a new offense, prejudicing the defendant's ability to defend against surprise charges.

The same is true here. Detective Colmer's testimony at the preliminary hearing identified two categories of abuse involving Doe 1 while he was under age 14: first, the bubble gum oral copulation incident, and secondly, a continuing pattern thereafter of oral sex, mutual masturbation, showering together, and anal sex. According to Colmer, who offered the only testimony at the preliminary hearing, both categories of abuse occurred at the residence on Mark Twain Road. Doe 1 and his family moved in 2004 from that residence to the Ashwood Apartments on Hemlock Street, and lived there until 2006.

Importantly, Colmer testified unequivocally that "there was no sexual contact" between defendant and Doe 1 in the 2004 to 2006 period when Doe 1 lived on Hemlock, and no evidence at the preliminary hearing suggested otherwise. Presumably that is why the prosecutor in the complaint and all charging instruments until the posttrial amendment listed 2004 as the end date for the charges in counts 1 and 2. But at trial, Doe 1 testified that, after the bubble gum incident, no further abuse occurred at the Mark Twain Road residence. Instead, Doe 1 explained the subsequent sex acts between 2004 and 2006 took place in the apartment on Hemlock Street. Colmer, however, testified at the preliminary hearing that no abuse occurred during that period.

The Attorney General argues the trial court did not err in allowing the prosecutor to amend count 2 after the close of evidence to extend the period alleged from 2004 to 2006, to conform to Doe 1's trial testimony. Relying on the general principle that "generic child molestation charges by no means deprive the defendant of a reasonable opportunity to defend" (*Jones*, *supra*, 51 Cal.3d at pp. 317, 320), the Attorney General argues that a defendant is not entitled to notice of the *specific* location of a charged offense.

11

But as *Jones* explained, the defendant *is* entitled to notice at the preliminary hearing of the "'time, place, and circumstances of charged offenses.'" (*Jones*, *supra*, 51 Cal.3d at p. 312.) Due process requires no less, and precludes amending the information to charge conduct not shown at the preliminary hearing. (*Ibid.*; § 1009.) The change in Doe 1's testimony from Colmer's preliminary hearing testimony that formed the basis for count 2 was not a minor discrepancy of dates or location, but a radical difference in time and place. The testimony at the preliminary hearing expressly disavowed any abuse occurred when Doe 1 lived at the Ashwood Apartments, and hence ruled out the 2004-2006 period as a basis for charges in count 2. But that was the very time frame to which the prosecutor amended count 2 after the close of evidence.

The Attorney General suggests defendant was not prejudiced by the amendment because his defense "did not involve individual rationales for each instance of abuse, as in *Graff*, but simply a blanket denial that he did not molest John Doe 1 until Doe 1 was 14 years old." But amending the charging dates to a period and place disavowed by the evidence presented at the preliminary hearing denied defendant a meaningful opportunity to investigate the charges and prepare his defense. He had no opportunity to consult the calendar, a diary, or otherwise try to reconstruct dates to determine if he even *visited* Doe 1 at the Hemlock Street address. Similarly, with the amendment coming after the close of evidence, he had no opportunity to attempt to recall or reconstruct the circumstances of when Doe 1 may have visited him at his apartment, or to develop evidence casting doubt on Doe 1's account. Here, precisely because the pre-2004 and 2004 to 2006 dates were so closely tied to specific locations, i.e., the Mark Twain Road residence and later Ashwood Apartments, respectively, the abuse allegations identified by Colmer at the preliminary hearing were similar to the specific instances of abuse in *Graff* and the specific vehicle-taking in *Dominguez*. As in those cases, the belated amendment to add what amounted to a new abuse allegation in a new location in a new date range violated due process and requires reversal of count 2.

C.     *Sentencing Issues*

The Attorney General concedes the sentencing minute order and the abstract of judgment must be corrected to reflect that the trial court did not impose a concurrent one-year term based on the jury's finding of substantial sexual conduct under section 1203.066, subdivision (a)(8).  The court imposed no such term, nor could it, because that section defines neither an offense nor an enhancement, but instead by its terms operates to preclude probation or a suspended sentence.  These matters, however, are mooted in this appeal by the necessity of resentencing on remand.

The Attorney General also concedes defendant's sentence on count 9 (§ 288.3, subd. (a)) must be corrected to reflect a four-month term.  The trial court imposed eight months as one-third the midterm of two years for the intended target offense of persuading a minor to perform a prohibited act.  (§ 311.4, subd. (c).)  But the punishment for contacting a minor with the intent to commit a sexual offense is the prison term "prescribed for an *attempt* to commit the intended offense."  (§ 288.3, subd. (a), italics added.)  Because attempts are punishable by half the ordinary term of imprisonment (§ 664, subd. (a)), a sentence of one-third the midterm on count 9 is four months.  Again, however, this issue is mooted and not subject to correction on appeal because defendant must be resentenced.

III

DISPOSITION

Defendant's conviction and sentence on count 2 are reversed, and the matter is remanded for resentencing. The judgment is affirmed in all other respects.


ARONSON, ACTING P. J.

WE CONCUR:


IKOLA, J.


THOMPSON, J.