Filed 4/7/14  P. v. Rivera CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>PAUL EDWARD RIVERA,<br><br>    Defendant and Appellant. | D062275<br><br><br>(Super. Ct. No. MH103032) |

APPEAL from an order of the Superior Court of San Diego County, Kerry Wells, Judge.  Affirmed.

Rudy Kraft, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Deputy Attorney General, A. Natasha Cortina, Paige B. Hazard and Joy Utomi, Deputy Attorneys General, for Plaintiff and Respondent.

Paul Edward Rivera appeals an order involuntarily committing him for an indeterminate term to the custody of the State of California Department of State Hospitals

(DSH) at the Coalinga State Hospital after a jury court found him to be a sexually violent predator (SVP) within the meaning of the Sexually Violent Predators Act (SVPA) (Welf. & Inst. Code,[1] § 6600 et seq.).

Rivera raises four contentions: (1) the trial court erroneously failed to remove the entire San Diego County Public Defender's Office (hereafter the public defender's office) from his case when it granted his pretrial motion to replace his court-appointed counsel under *People v. Marsden* (1970) 2 Cal.3d 118 (*Marsden*); (2) this court should either find the current version of the SVPA violates his constitutional right to equal protection under the law notwithstanding this court's "badly flawed" decision in *People v. McKee* (2012) 207 Cal.App.4th 1325, 1330 (*McKee II*), which this court should not follow in this case, or remand this case for an evidentiary hearing "to determine whether the People can establish, under an appropriate application of the scrutiny standard, that California's current SVP law is constitutional"; (3) the current version of the SVPA violates the due process, ex post facto, and double jeopardy provisions of the California and United States Constitutions; and (4) recently enacted changes to the SVPA, effective January 1, 2014, violate his due process rights. We affirm the order.

---

[1]     Undesignated statutory references will be to the Welfare and Institutions Code unless otherwise specified.

FACTUAL BACKGROUND[2]

Over a span of about 30 years, Rivera committed violent sexual criminal acts against 10 identifiable victims ranging in age from five to 76 years. In some instances he attacked multiple victims in one night, as in August 1966 when at 9:00 p.m. he molested the five-year-old daughter of an acquaintance, at 11:00 p.m. he raped an 18-year-old female stranger, and at 4:00 a.m. he broke into a college dorm and forced his way into bed with a female student—a stranger who had been asleep—by showing her a knife after she resisted. On other occasions, he repeatedly attacked a single victim. For example, in 1974 he kidnapped a 20-year-old stranger after breaking into her home while she was sleeping, threatened her with a knife, drove her to a wooded area, forced her to perform various sexual acts, and then raped her. When she tried to escape, he raped her again.

DISCUSSION

I. *MARSDEN*

Rivera first claims the trial court erroneously failed to remove the entire public defender's office from his case when it granted his pretrial motion to replace his court-appointed counsel under *Marsden*, *supra*, 2 Cal.3d 118. We conclude Rivera has forfeited this claim.

---

[2]    As Rivera only challenges the court's rulings during a *Marsden* proceeding and the constitutionality of the SVPA, and he does not challenge the sufficiency of the evidence supporting the jury's determination he is an SVP, the underlying facts are largely irrelevant to the issues he raises on appeal. Accordingly, the following summary of the facts is brief.

A. *Background*

1. *Rivera's first Marsden hearing*

On September 21, 2010, the Honorable Roger W. Krauel heard Rivera's first *Marsden* motion requesting the removal of Deputy Public Defender Laura Arnold. Richard Gates, supervisor of the SVP Unit at the public defender's office, appeared as Rivera's counsel.

Rivera told the court that his appointed counsel of record, Stephanie Slattery, informed him that she intended to file a motion for reconsideration of the court's decision not to order new evaluators in light of the decision in *In re Ronje* (2009) 179 Cal.App.4th 509. Slattery informed Rivera that she had been transferred to another branch of the public defender's office and taken off Rivera's case. Arnold replaced Slattery, and she explained to Rivera her intention to file a writ of mandamus in an effort to seek new evaluators, which she felt could be more successful than a motion to reconsider. Rivera complained that despite this first show of effort Arnold never visited him or filed the writ. Rivera told the court he spoke to Arnold by telephone, and she yelled and indicated she was busy with other matters.

Gates explained to the court that Arnold was originally transferred to his unit due to her expertise with writs. She was assigned Rivera's case, but she had already been assigned a rape trial. He indicated that Arnold's workload in the SVP Unit became unmanageable. Gates also indicated he thought there had been a breakdown in Arnold's relationship with Rivera. On August 4, 2010, Gates personally visited Rivera to explain he was going to remove Arnold as Rivera's attorney. During this meeting Gates informed

4

Rivera that a new public defender would be assigned to his case. The newly assigned attorney, however, left the office on permanent medical leave or retirement. Gates told the court that another public defender, Neil Besse, had been assigned the day before the *Marsden* hearing, but Besse's current assignment in the juvenile division made him unavailable until October 18.

Gates informed the court that he told Rivera during the August 4 meeting that he believed the motion for reconsideration and the writ of mandamus would not be successful. Gates explained:

> "I also said to him that I'm not going to be your attorney. That's going to be something that you're going to work out with the attorney that you get. It was just my opinion."

Gates also told the court:

> "I'm going to leave the matter of the reconsideration to his new attorney because he's going to be the one that has to make the strategic decision as to whether to file the writ of mandamus or not and then to explain it to Mr. Rivera."

The court told Rivera that the public defender's office had acknowledged a breakdown in communication had occurred "through no fault" of the public defender's office or Rivera and that Rivera's public defender had been replaced. The court granted Rivera's *Marsden* motion and told him he had "won."

Rivera then told the court he did not want the public defender's office to represent him and asked for time for his friends to "pool their money" and search for an SVP attorney he might retain. The court responded that Rivera's request that the public defender's office not represent him had not been raised in his *Marsden* motion. The court

5

also expressed concern regarding "misstatements" Rivera had made in his motion papers about "[what had] gone on with [his] attorneys." The court set a new readiness conference for October 25, 2010, after Gates requested additional time to allow Rivera's new counsel, Besse, time to prepare after he arrived in the SVP Unit.

Rivera remained unsatisfied and again requested that the entire public defender's office be removed, stating: "I need to fight my case. They don't want to fight it." The court told Rivera, "You haven't talked to [Besse]. You need to do that first." The court added that, if Rivera wanted to challenge Besse, he could do so at the hearing on October 25. Rivera replied that Besse "[was] going to follow the same protocol that supervisor [Gates] just gave" the removed deputy public defender, Arnold. The court told Rivera, "You need to file a motion on that regard to disqualify the entire organization, and you have not done that. And you can't do it now without having filed papers with the court. So it may take a new motion for you." Rivera responded, "Okay. I'll do that."

2. *Rivera's second Marsden hearing*

On October 25, 2010, Rivera made his second *Marsden* motion, in which he requested the removal of his new deputy public defender, Besse, and the entire public defender's office. At the hearing, again in front of Judge Krauel, Rivera complained that he could not reach Besse. He also complained that Besse's supervisor, Gates, was prejudiced against him, and Besse "would not be allowed to use the same skill, prudence, and performance as other members of the bar to defend me at all stages of the court and trial proceedings, let alone defense strategy and access to expert witnesses, psychological testing, screening—for my current mental status."

6

The court asked Rivera, "[W]hat are the specific reasons why you feel [Besse] should be replaced?"  Rivera complained that Besse was "working in the same office with [his supervisor,] Gates, who will be telling him or advising him, and he has to go with him."

The court then asked Rivera, "Has [Besse] done something that you think he should not have done?"  Rivera replied, "Well, I think he's going to be total with the dude, and that's the same opinions that [Gates] has towards me and [Arnold].  [That] I'm a useless case . . . ."

Acknowledging that he "ha[d] nothing against [Besse]," Rivera stated, "I feel that he's just going to be another [Gates] and lie to me."  Rivera complained that, since the last *Marsden* hearing, "it was hard to get ahold of [Besse]."

Besse told the court he had been practicing law since 1996 and began working at the public defender's office in 2000.  He stated he had "considerable experience" in the field of criminal law, and his experience with SVP cases was "more limited."  He had been representing Rivera for about a week prior to the hearing.  After the court noted that the probable cause hearing had not been set yet, Besse informed the court he had not yet begun to prepare for that hearing, but he had reviewed Rivera's file and had discussed the case with his colleagues.

The court indicated Besse had adequately addressed Rivera's first concern regarding lack of contact.  As to Rivera's second concern, Besse assured the court that "all of our attorneys at the Public Defender's Office have license to act independently."  Besse indicated that Gates provided no direction on the case, nor pressure to handle it a

7

particular way.  As to whether he would be influenced by other colleagues' negative opinions of Rivera, Besse stated "[w]e are not beholden to each other."

The court denied appellant's *Marsden* motion for removal of Besse based on its finding that Besse was properly representing Rivera.  The court also denied the motion for removal of the public defender's office, stating:

> "You have failed to show a basis for disqualifying the entire office from the participation in your defense.  The entire office is, in fact, not participating.  [Besse] has described his independence in that regard."

### 3. *Rivera's third Marsden hearing*

In late December 2011, more than a year after the hearing on Rivera's second *Marsden* motion, Rivera filed a handwritten motion requesting a third *Marsden* hearing and claiming he had "a long list of things" he would address at the hearing.  He stated, "I am requesting this court relieve the Primary Public Defender's Office and my attorney [Besse] due to a conflict of interest."

At the January 9, 2012, hearing on Rivera's motion, the following exchange occurred:

> "[Besse]:  I would also note [Rivera] has advised me, and I believe requested in writing, that this court schedule a *Marsden* motion today, but I think he'll tell you today that he does not want that after all.
>
> "The Court:[3]  That's important, Mr. Rivera.  So what's your position on that?  Do you understand what a *Marsden* hearing is?
>
> "The Defendant:  Yes, I do, Your Honor.

---

3     The Honorable Timothy R. Walsh.

"The Court:  Is that something you want the court to conduct, which would be a hearing to determine whether or not to relieve Mr. Besse?

"[Rivera]:  No, I don't, Your Honor."

"The Court:  All right.  So you're okay with continuing this case and setting dates and keeping [Besse] as your lawyer?

"[Rivera]:  Yes, sir."

With Rivera's consent, the court set the trial for March 26, 2012.

B.  *Analysis*

We conclude Rivera abandoned his third pretrial *Marsden* motion—in which he requested the removal of both his new appointed counsel (Besse) and the entire public defender's office—by expressing at the hearing his satisfaction with the legal representation he was receiving, and he thereby forfeited his claim on appeal that the SVP commitment order must be reversed on the ground the court prejudicially erred by failing to remove the entire public defender's office from his case.

In *People v. Vera* (2004) 122 Cal.App.4th 970, the Court of Appeal stated: "While we are aware of no precedent finding abandonment of a *Marsden* motion, it is established that a defendant's conduct may amount to abandonment of a request to represent himself under *Faretta v. California* (1975) 422 U.S. 806.  [Citations.]  If a defendant can abandon his request to substitute himself for counsel, *a defendant can abandon his request to substitute another counsel*."  (*Id*. at pp. 981-982, italics added; see also *People v. Jones* (2012) 210 Cal.App.4th 355, 361 [citing *Vera* with approval].)

9

Here, more than a year after the court denied his second *Marsden* motion in which he sought removal of both Besse and the entire public defender's office, Rivera filed in propria persona his third *Marsden* motion again requesting removal of both Besse and the entire public defender's office. However, at the hearing on his motion, Rivera indicated he did not want the court to conduct a hearing to determine whether Besse should be relieved as his appointed counsel and then expressed satisfaction with the legal representation he was receiving. Specifically, as already noted, the following exchange took place between the court and Rivera after Rivera indicated he understood what a *Marsden* hearing was:

> "The Court: Is that something you want the court to conduct, which would be a hearing to determine whether or not to relieve Mr. Besse?
>
> "[Rivera]: *No, I don't, Your Honor.*"
>
> "The Court: All right. *So you're okay with continuing this case and setting dates and keeping* [*Besse*] *as your lawyer*?
>
> "[Rivera]: *Yes, sir.*" (Italics added.)

By telling the court he did not want the court to make a determination as to whether Besse should be relieved as his appointed counsel and by explicitly indicating his satisfaction with the pretrial legal representation he was receiving, Rivera abandoned his *Marsden* motion, including his request for removal of the entire public defender's office, and thereby forfeited the *Marsden* claim he now raises on appeal. (*People v. Jones*, *supra*, 210 Cal.App.4th at p. 361; *People v. Vera*, *supra*, 122 Cal.App.4th at pp. 981-982.)

10

The forfeiture of Rivera's claim includes the forfeiture of his contention the court erred during the first *Marsden* hearing by "fail[ing] to address or make any inquiry into [his] reasons for wanting to discharge the entire Public Defender's Office." At that hearing, the court denied Rivera's request because he had not made the request in a written motion.

The Attorney General correctly acknowledges that "[t]o the extent the trial court relied on [Rivera's] failure to pre-file a written request to substitute the entire public defender's office as a basis for denying that motion, the trial court was in error." A *Marsden* motion may be made orally. (*People v. Lucky* (1988) 45 Cal.3d 259, 281, fn. 8 ["We do not necessarily require a proper and formal legal motion, but at least some clear indication by defendant that he wants a substitute attorney."]; *People v. Lee* (2002) 95 Cal.App.4th 772, 780.)

However, the record shows that, at that first *Marsden* hearing, the court indicated to Rivera that he would "need to file a motion . . . to disqualify the entire organization," and Rivera replied, "Okay. I'll do that." Thereafter, Rivera did file the motion, which the court denied on the merits at the conclusion of the second *Marsden* hearing. Rivera thereafter renewed his motion to disqualify the public defender's office; but, as already discussed, he freely abandoned that motion at the third *Marsden* hearing by expressing satisfaction with his legal representation, thereby forfeiting any claim the court erred during the first *Marsden* hearing by failing to consider Rivera's reasons for wanting to discharge the entire public defender's office.

11

## II.  *EQUAL PROTECTION CLAIM*

Rivera next contends this court should either (1) find the current version of the

SVPA violates his constitutional right to equal protection under the law notwithstanding

this court's "badly flawed" decision in *McKee II*, *supra*, 207 Cal.App.4th at page 1330,

which he asserts this court should not follow in this case; or (2) remand this case for an

evidentiary hearing "to determine whether the People can establish, under an appropriate

application of the scrutiny standard, that California's current SVP law is constitutional."

)! We reject this contention.

Like the defendant in *People v. McKee* (2010) 47 Cal.4th 1172 (*McKee I*), Rivera

suggests his involuntary civil commitment under the SVPA violates equal protection

principles because he is subject to a greater burden to obtain release than mentally

disordered offenders (MDO's) civilly committed under the Mentally Disordered Offender

Act (Pen. Code, § 2960 et seq.) or persons being found not guilty by reason of insanity

(NGI's) and civilly committed under the statutory NGI commitment scheme (Pen. Code,

§ 1026 et seq.).  (See *McKee I*, at pp. 1196-1197, 1200-1202, 1207.)  The California

Supreme Court did not decide this issue in *McKee I*.  Instead, it remanded the matter to

this court with directions to remand it back to the trial court for an evidentiary hearing to

determine whether the People could demonstrate a "constitutional justification for

imposing on SVP's a greater burden than is imposed on MDO's and NGI's in order to

obtain release from commitment."  (*McKee I*, *supra*, 47 Cal.4th at pp. 1208-1209, 1211,

fn. omitted.)  The *McKee I* court stated that the People would have an opportunity to

make an "appropriate showing on remand" that, "notwithstanding the similarities between

12

SVP's and [other civilly committed persons, such as] MDO's, the former *as a class* bear a substantially greater risk to society, and that therefore imposing on them a greater burden before they can be released from commitment is needed to protect society." (*McKee I*, at p. 1208, italics added.)  The Supreme Court suggested a variety of ways the People might make such a showing, including the presentation of evidence that SVP's "as a class" pose a greater risk of recidivism because of the "inherent nature of the SVP's mental disorder" or that "SVP's pose a greater risk to a particularly vulnerable class of victims."  (*Ibid*.)

On remand, the trial court conducted a 21-day evidentiary hearing and determined the People met their burden of demonstrating a constitutional justification for the disparate treatment of SVP's under the standards set forth in *McKee I*.  (*McKee II*, *supra*, 207 Cal.App.4th at p. 1330.)  Accordingly, the court confirmed its order committing the defendant under the SVPA to the custody of the California Department of Mental Health for an indeterminate term.  (*McKee II,* at p. 1332.)

In *McKee II* we independently reviewed the trial court's decision and affirmed the commitment order.  (*McKee II*, supra, 207 Cal.App.4th at pp. 1338, 1350.)  We concluded that "the People on remand met their burden to present substantial evidence, including medical and scientific evidence, justifying the [SVPA's] disparate treatment of SVP's (e.g., by imposing indeterminate terms of civil commitment and placing on them the burden to prove they should be released)." (*McKee II*, at p. 1347.)  We also concluded that "the disparate treatment of SVP's under the Act is reasonable and factually based and was adequately justified by the People at the evidentiary hearing on remand"

13

and that the SVPA "[did] not violate McKee's constitutional equal protection rights." (*McKee II*, at p. 1348.)

In support of our conclusions in *McKee II*, we stated that the People had shown that (1) notwithstanding their similarities with MDO's and NGI's, SVP's as a class bear a substantially greater risk to society and, thus, imposing on them a greater burden before they can be released from commitment is needed to protect society; (2) SVP's as a class are significantly more likely to recidivate due to the inherent nature of the SVP's mental disorder; (3) SVP's pose a greater risk and unique dangers to particularly vulnerable victims, such as children; and (4) the diagnoses and treatment needs of SVP's differ from MDO's and NGI's, " thereby supporting a reasonable perception by the electorate that passed Proposition 83 that the disparate treatment of SVP's under the amended Act is necessary to further the state's compelling interests in public safety and humanely treating the mentally disordered." (*McKee II*, *supra*, 207 Cal.App.4th at p. 1347.)

Rivera does not present any persuasive new arguments that would give us reason to question our decision in *McKee II*. Accordingly, we reject his assertion that "this court should reconsider its reasoning in *McKee II*."

Our conclusions and reasoning in *McKee II* apply to this case as well. Following *McKee II*, we conclude the SVPA does not violate Rivera's constitutional equal protection rights. Accordingly, we deny his request for remand and affirm the order committing him to the custody of DSH.

III. *DUE PROCESS, DOUBLE JEOPARDY, AND EX POST FACTO CLAIMS*

Rivera also contends the current version of the SVPA violates the due process, ex post facto, and double jeopardy provisions of the California and United States Constitutions. We reject this contention.

Citing *McKee I*, *supra*, 47 Cal.4th 1172, Rivera acknowledges these constitutional challenges have been rejected by the California Supreme Court, and he asserts he wishes to preserve these issues for state and federal judicial review.

We are bound to follow Supreme Court precedent. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.) Thus, we must follow *McKee I*. Accordingly, we reject Rivera's due process, double jeopardy, and ex post facto claims.

IV. *DUE PROCESS CHALLENGE TO NEWLY AMENDED SECTION 6608*

Last, Rivera claims that recently enacted changes to the provisions of section 6608 of the SVPA, effective January 1, 2014, violate his state and federal due process rights. Specifically, Rivera asserts that in August 2013 the Governor signed Senate Bill No. 295, which amended various provisions of the SVPA, including section 6608. He further asserts that, "under the new version of the law, a patient cannot directly seek unconditional discharge without the concurrence of the annual evaluator. Instead, the only way for such a person to be unconditionally discharged is to successfully be placed in a conditional release program, and remain in that program for a full year. It is this requirement that violates [his] due process rights."

The Attorney General responds that (1) Rivera's due process challenge to section 6608 "is not ripe because his appeal is from a decision made under the [SVPA's] initial

15

commitment procedures, and not [from] a determination under the post-commitment release procedures"; and (2) Rivera's claim fails on the merits because requiring an SVP to serve one year in conditional release prior to unconditional release into society does not violate due process because "some interference with the liberties of persons unanimously found to be [SVP's] with mental disorders is justified in order to ensure public safety."

We conclude Rivera's due process claim is not ripe for judicial review. The California Supreme Court has explained that "[t]he ripeness requirement, a branch of the doctrine of justiciability, prevents courts from issuing purely advisory opinions. [Citation.] . . . It is in part designed to regulate the workload of courts by preventing judicial consideration of lawsuits that seek only to obtain general guidance, rather than to resolve specific legal disputes. However, the ripeness doctrine is primarily bottomed on the recognition that judicial decisionmaking is best conducted in the context of an actual set of facts so that the issues will be framed with sufficient definiteness to enable the court to make a decree finally disposing of the controversy." (*Pacific Legal Foundation v. California Coastal Com.* (1982) 33 Cal.3d 158, 170; see also *People v. Johnson* (2006) 142 Cal.App.4th 776, 789, fn. 4 [the ripeness doctrine "'is rooted in the fundamental concept that the proper role of the judiciary does not extend to the resolution of abstract differences of legal opinion'"].) "'A controversy is "ripe" when it has reached, but has not passed, the point that the facts have sufficiently congealed to permit an intelligent and useful decision to be made.'" (*Pacific Legal Foundation*, *supra*, at p. 171.)

16

Here, Rivera's due process claim is not ripe because, as the Attorney General correctly points out, his appeal is from his initial commitment as an SVP, *not* from a determination under the postcommitment release procedures set forth in the SVPA; and, thus, he has not shown, and cannot demonstrate, that he has availed himself of the section 6608 procedures he challenges, much less that he was aggrieved by a ruling thereunder. (See *People v. Williams* (1966) 247 Cal.App.2d 169, 170 ["One who seeks to raise a constitutional question must show that his rights are affected injuriously by the law which he attacks and that he is actually aggrieved by its operation."].)

Rivera seeks to avoid application of the ripeness doctrine by asserting "he is not an SVP" and "requiring [him] to litigate this issue in the future when he wishes to seek unconditional discharge will . . . drag on the time that he can be held in custody." Although Rivera's argument is based on his claim he is not an SVP, a jury found he is an SVP, and in this appeal from the SVP commitment order he does not challenge the sufficiency of the evidence supporting the jury's verdict.

## DISPOSITION

The order of the trial court committing Rivera to the custody of the DSH under the SVPA is affirmed.

NARES, J.

WE CONCUR:

McCONNELL, P. J.

IRION, J.