Filed 5/21/24  P. v. Eng CA1/1
## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>DAVID T. ENG,<br><br>        Defendant and Appellant. | A166699<br><br>(San Francisco City & County Super. Ct. Nos. CRI 1093930, 132384-2) |

Defendant David T. Eng appeals from the denial of a petition for resentencing under Penal Code[1] section 1172.6 after an evidentiary hearing. He contends the trial court abused its discretion in denying his *Marsden*[2] motions to substitute appointed counsel and in denying his petition for resentencing.  We affirm.

## BACKGROUND

Defendant was convicted of second degree murder in 1989 and sentenced to 17 years to life.  In July 2021, he filed a petition for resentencing pursuant to now section 1172.6 (formerly § 1170.95).  The prosecution stipulated the petition stated a prima facie case for resentencing, and the

---

[1]  All further statutory references are to the Penal Code unless otherwise indicated.

[2]  *People v. Marsden* (1970) 2 Cal.3d 118 (*Marsden*).

trial court appointed counsel, issued an order to show cause, and set the matter for an evidentiary hearing.

Several months later, defendant filed a *Marsden* motion requesting the court relieve his current counsel and appoint new counsel to represent him on his resentencing petition. The trial court heard and denied the motion without prejudice.[3]

Shortly before the evidentiary hearing on his petition for resentencing, defendant filed a second *Marsden* motion, which he withdrew at the beginning of the evidentiary hearing.

The court proceeded to the merits of defendant's petition. The prosecution, relying principally on the testimony at the preliminary hearing, argued the "transcript established that [defendant] personally stabbed the victim—participated in it. The victim was stabbed 29 times. There is not a scenario in which malice for this murder conviction could be imputed to the [defendant]." Counsel for defendant did not present any additional evidence and submitted on the record of conviction.

After the prosecution also submitted, the court asked defense counsel if there was "[a]ny argument . . . on behalf of [defendant] regarding the People's position that there's sufficient evidence based on the preliminary hearing transcript." Defense counsel responded: "Well, a preliminary hearing transcript establishes probable cause only. It does not establish proof beyond a reasonable doubt which is the burden on the People at this particular hearing, so in that regard it's insufficient."

---

[3] We discuss the details of the hearings on defendant's *Marsden* motions in detail, *infra*, in connection with our discussion of the issues on appeal.

2

The court then asked defendant if he "wish[ed] to address the Court in any way," noting he had previously mentioned he wanted to bring "a couple things up." Defendant responded he "would like to go on with the Marsden motion." The trial court heard the motion and denied it.

The court then turned to the merits of defendant's petition. Stating it had reviewed the information and the preliminary hearing transcript, the court discussed what the record showed: Defendant's sister[4] reported to defendant and codefendant, Anthony Hardnett, "that she had been . . . . terribly disrespected and that she wanted something done about it. And [defendant] along with his codefendants then proceeded to the location where the victim was. The victim was essentially invited into a room to get high— that kind of thing and that [*sic*] was set upon by a group of people including [defendant]. And the transcripts of the sworn testimony indicates [*sic*] that [defendant] was part of the group that stabbed the victim. The victim was stabbed 29 times. And among the first people to stab were [defendant and Hardnett]. The . . . decedent was alleged to have been a pimp and a drug dealer involved in prior violence."

The court further stated: "There's testimony that when [defendant] himself stabbed the decedent and then put his hand over the decedent's mouth and himself [*sic*] and the others continued to stab the decedent as the decedent was sliding down up against the wall and that [defendant] actually urged others to stab the victim some more." Based on that testimony, the court found defendant "is not someone who is eligible under the statute." The court also stated it "did not see that there was any felony murder theory that was proffered at the trial. I don't find that there was a natural and probable consequence theory where [defendant] or one of his codefendants was accused

_____

[4] Defendant, his sister, and Hardnett were jointly tried.

3

of a target crime that then resulted in the decedent being killed. I didn't find that there was any evidence of that." The court expressly found defendant "was an active participant acting with the intent to kill." The court therefore ruled defendant did not qualify for relief under section 1172.6 and denied the resentencing petition.

## DISCUSSION

### Marsden *Motions*

Defendant contends the trial court abused its discretion in denying his motions to substitute counsel because (1) he presented clear evidence of irreconcilable conflicts that made it likely he would receive ineffective representation and (2) the court's failure to conduct an adequate inquiry of counsel prevented it from making an informed decision on the motions.

" 'When a defendant seeks substitution of appointed counsel pursuant to [*Marsden, supra,*] 2 Cal.3d 118, "the trial court must permit the defendant to explain the basis of his contention and to relate specific instances of inadequate performance. A defendant is entitled to relief if the record clearly shows that the appointed counsel is not providing adequate representation or that defendant and counsel have become embroiled in such an irreconcilable conflict that ineffective representation is likely to result." ' " (*People v. Ng* (2022) 13 Cal.5th 448, 500.) We review the denial of a *Marsden* motion under the abuse of discretion standard. (*Ng*, at p. 500.)

#### Initial *Marsden* Motion

Defendant filed his first *Marsden* motion more than two months before the evidentiary hearing. The written motion included a declaration stating he filed his petition for resentencing in June or July 2021 and was appointed counsel. A year later, after becoming "increasingly frustrated," he made "a major effort to find out what was going on with [his] resentencing efforts from

4

[his] difficult to reach appointed attorney." When defendant was finally able to speak with his attorney, he told defendant he did not have grounds for relief under section 1172.6. Defendant told his attorney that his codefendant, Hardnett, testified at trial that he (Hardnett) was the actual killer, that because of this, defendant "could not be convicted under the laws in effect today," and that his attorney "needed to get the transcripts and see for himself." His attorney assertedly told him "it didn't matter." Defendant claimed he therefore had "a substantial difference of opinion" with his attorney and his attorney had a conflict of interest based on "his own busy schedule and collegial relationships with the [d]istrict attorney's office." Finally, defendant averred his codefendants, Hardnett and defendant's sister, were prepared to testify he was not the actual killer, had no intent to kill, and was never recklessly indifferent to human life.

At the *Marsden* hearing, defendant complained about the delays in the resentencing proceedings and his counsel not acting as "a zealous advocate." Defendant maintained his attorney was "on the side of the District Attorney" and had not considered his culpability at the time of the murder. Defendant also said he had not received the transcripts from his trial and complained his attorney told him he was ineligible for relief without reviewing the transcripts, which, according to defendant, would reveal that Hardnett "took the stand and stated he [(Hardnett)] committed this murder." Defendant argued that he told his counsel the jury did not find him guilty of first degree murder, despite testimony by his ex-girlfriend that he planned and premeditated the murder. Because "everything needed to be reevaluated," it was not reasonable to assume her testimony was truthful.

The trial court asked defense counsel to address defendant's complaints, beginning with his concern that the case had aged with no

resolution.  Counsel noted one reason for the delay was he initially sought relief for defendant under section 1170, subdivision (d), because defendant's sister had been successful with that process.  But the district attorney unequivocally refused to agree to similar relief for defendant.  He also told the court there had been delays due to COVID-19.

Counsel further told the court he last spoke with defendant about three weeks before the hearing.  Although he had not received the trial transcripts at that time, he had reviewed a Ninth Circuit Court of Appeal opinion and had spoken with trial counsel for the codefendants.[5]  Defendant's attorney explained to defendant that even if he was not the actual killer, he would still be ineligible for relief under section 1172.6 if he was aiding and abetting a killing with intent to kill, which appeared to be the situation.  Counsel had recently received the trial transcripts, jury instructions, and closing arguments from the trial and stated, "I've gone through that.  What I have not gone through yet, I didn't have a chance, was Mr. Hardnett's testimony."  With regard to Hardnett's testimony, counsel had told defendant that since all three codefendants were convicted, it appeared the jury did not believe his testimony over that of defendant's ex-girlfriend, who testified for the prosecution.

The trial court found counsel had not been dilatory and had "been moving forward trying to figure out the best path to get [defendant's] relief."  The court told defendant it appreciated his concerns, but denied the motion without prejudice, concluding counsel was "providing constitutionally adequate representation" and there had not been "a complete breakdown of communication between the parties."

---

[5]  Counsel apprised the court defendant's trial counsel was no longer available and was living in France.

6

**Subsequent *Marsden* Motion(s)**

About two weeks prior to the evidentiary hearing on his petition for resentencing, defendant filed a second *Marsden* motion.

Accordingly, prior to the start of the hearing, the court closed the courtroom to the public, stated defendant had filed a *Marsden* motion, and asked if he still wanted to relieve his attorney. Defendant told the court he wanted to withdraw the motion.

The court then reopened the courtroom and proceeded with the hearing.

After both the prosecution and defense counsel submitted on the matter, the court asked defendant if he "wish[ed] to address the Court in any way," noting defendant had previously mentioned he wanted to bring "a couple things up." Specifically, the court stated: "I wanted to deal with his first motion which was the Marsden motion. And now that we've moved past that, is there anything you would like to address the Court with? He doesn't have to, but he sure is welcome to." Defendant responded that he "wanted to address the Marsden motion, but I withdrew that plea, your Honor, because I wanted to trust in the system one more time."[6]

The trial court then stated: "Okay. Well, I don't want to mix up apples and oranges. That's why I made a very specific ruling regarding the Marsden which is I was prepared to hear from you again on the Marsden. Even though I heard from you before, I told you then as I was prepared to do this morning is to hear you out again on the Marsden. [¶] That's a very separate issue from the actual merits of your case. My understanding is that you did

---

[6] At the end of his statement, defendant again emphasized, "when I did withdraw my plea from the Marsden motion, you know, I did that under the discretion of your decision of whatever you render here today."

not want to go ahead with the Marsden today and that you're withdrawing the Marsden motion. Have you had any change of heart about that?"

Defendant responded, "No, I would like to go on with the Marsden motion." The trial court asked, "So you want to go on with it now?" Defendant responded, "Yes."

The court held a *Marsden* hearing outside the presence of the public, inviting defendant to address very specifically any reasons his counsel was unable to provide effective assistance. Defendant stated his attorney told him that he did not have the time for his case and had too much on his plate. Defendant also claimed his attorney had told his sister that if they fired him, defendant would never get out of prison. Defendant suggested counsel's statements were retaliation for his first *Marsden* motion, and asked the court "to give [him] somebody that does have the time to fight for my defense respectfully."

The court inquired of counsel whether he felt like he had enough time to provide constitutionally adequate assistance of counsel to defendant; counsel confirmed that he did and denied telling defendant or his sister that he did not have time to work on the case. The court asked counsel whether he ever said to defendant's sister "something to the effect of 'if you fire me, you'll never get out of prison.'" Counsel denied making such a statement and could not think of any conversation that could have been misconstrued to come up with those words.

Finally, the trial court asked counsel if he felt there was anything more he needed, including additional time to prepare, or some additional resources to represent defendant on his petition. Counsel responded that in addition to the exhibits provided by the prosecution, counsel had reviewed a Ninth Circuit opinion "which laid out some of the facts . . . and was provided with

8

the trial transcript in this matter and analyzing and reviewed . . . the jury instructions among other things.  So I went through it all.  There's nothing else I can do at this point, your Honor."

The court asked defendant if he had anything else to add.  Defendant reiterated his claim that counsel told him he was overwhelmed and did not have the time for his case, and confirmed he had nothing else to add.

The trial court denied the motion, ruling as follows:

> "Okay.  Well, the Court's going to deny the motion.  I mean, [counsel] is a well-known practitioner in these courts.  And sometimes there's misunderstanding or miscommunications.

> "There's a lot of pressure in these things with [defendant] being back in custody after being out for a good leave time.  I understand that.  And frankly the comment, 'if you fire me, you'll never get out of prison'—it just doesn't make any sense.  I don't believe that was said, and it doesn't make any sense as to why one thing would be connected to the other.

> "I have no doubt, [defendant], that maybe there was a conversation; perhaps you misheard something.  In terms of having enough time, I've indicated to [counsel]—he's well aware we're willing to give resources in these cases.  The Bar Association of San Francisco has paralegals he can access.

> "It looks to me like [counsel] has gone above and beyond in looking at the appellate record in your case, including the federal appellate record.  And he's just not finding something that puts you in a position to be given relief under this statute, and that's not [counsel's] fault.  That's just the law that we're dealing with here.

> "So I don't find that he's provided ineffective assistance of counsel.  It looks like he's reviewed everything.  He's gone as far as he can go in terms of what relief is available to you under the statute.  So I am going to deny your motion at this time."

**The Trial Court Acted Within Its Discretion in Denying the Motions**

Defendant contends the trial court failed to conduct an adequate inquiry into the basis of his *Marsden* motions, and thus was unable to make an informed decision as to whether he had received ineffective assistance. This, in turn, says defendant, prevents this court from determining whether he would have received a more favorable ruling on his section 1172.6 petition had the evidence he wanted counsel to provide the trial court been presented at the evidentiary hearing. Specifically, defendant focuses on the failure of his counsel to present any evidence, including Hardnett's trial testimony or new testimony from defendant or his codefendants, and failure to make any substantive argument at the close of the hearing. Defendant asserts he is entitled to both a new *Marsden* hearing *and* a new evidentiary hearing, "with all parties and the court having access to the complete record."

As to the first *Marsden* motion, defendant has not shown the trial court faltered in its duty of inquiry. Indeed, defendant does not advance any specific claims of error with respect to the trial court's inquiry or ruling on his first *Marsden* motion, and states in his reply brief that his "challenge on appeal is directed in substantial part to the second *Marsden* denial." As we have recited, at the hearing on defendant's first *Marsden* motion, the trial court allowed defendant an opportunity to state all of his concerns regarding counsel's representation, which focused primarily on defendant's assertions that counsel was difficult to reach, too busy to work on his case, was "on the side" of the district attorney, and had not reviewed the trial transcripts. Counsel responded, explaining he had been focused on pursuing an alternative avenue for sentencing relief and also experienced delays related to COVID-19. Counsel also stated he had only recently received the trial transcripts, jury instructions, and closing arguments, and stated he had not

10

*yet* had the opportunity to review Hardnett's trial testimony. At that point, the evidentiary hearing was still two months away. The court denied the motion, but without prejudice, allowing defendant to reassert any of his concerns with counsel's performance later in the proceeding. The record thus reflects that the trial court amply complied with its duty to allow defendant to explain the basis of his complaints and heard from counsel. It credited counsel's statements and reasonably concluded counsel had not been dilatory or ineffective. (See *People v. Taylor* (2010) 48 Cal.4th 574, 599–600 [trial court's inquiry at *Marsden* hearing was sufficient where defendant had "opportunity to air his complaints"; "trial court was entitled to credit counsel's explanations and to conclude that defendant's complaints were unfounded"]; *People v. Smith* (1993) 6 Cal.4th 684, 696–697 (*Smith*) [court did not err in denying *Marsden* motion where it allowed defendant to fully state his complaints and carefully inquired into them].)

As for defendant's second motion, he unequivocally withdrew it immediately prior to the evidentiary hearing and agreed to proceed with current counsel. Accordingly, the trial court had no duty to conduct an inquiry on that motion. (See, e.g., *People v. Padilla* (1995) 11 Cal.4th 891, 926–927 [trial court did not err in failing to hold *Marsden* hearing where defendant affirmatively withdrew request for substitute counsel], overruled on other grounds in *People v. Hill* (1998) 17 Cal.4th 800, 823, fn. 1; *People v. Jones* (2012) 210 Cal.App.4th 355, 362 [trial court's failure to hold hearing on *Marsden* motion was not error where the defendant abandoned his claim].)

Defendant's final motion was made orally *after* the evidentiary hearing was concluded and both the prosecutor and defense had submitted the

11

matter.[7]  It appears the motion was not aimed at obtaining new counsel *going forward*.  Rather, defendant apparently wanted a new evidentiary hearing, this time with counsel who supposedly would provide adequate representation.  In other words, despite his decision at the outset of the hearing to go forward with his current counsel, he apparently concluded in hindsight that had been a poor tactical choice and wanted another opportunity to make his case with different counsel.

Defendant seeks the same relief on appeal.  To begin with, he cites no authority suggesting a *Marsden* motion can be used as a substitute for a motion for a new trial.[8]  Indeed, by the time defendant made his third *Marsden* request, there was nothing left for a new attorney to do.  "Whenever [a *Marsden*] motion is made, the inquiry is forward-looking in the sense that counsel would be substituted in order to provide effective assistance in the *future*."  (*Smith*, *supra*, 6 Cal.4th at p. 695; see *People v. Whitt* (1990) 51 Cal.3d 620, 658–659 [posttrial *Marsden* motion could properly be denied as untimely; "court was not required to stop the nearly completed proceeding in its tracks in order to allow another attorney to completely familiarize himself with the case"].)

Furthermore, the trial court heard defendant's oral motion and offered defendant ample opportunity to state all of his complaints regarding counsel's

---

[7]  We refer to this motion as defendant's "third" *Marsden* motion in light of the unequivocal withdrawal of his second *Marsden* motion prior to the evidentiary hearing.

[8]  There is no dispute a defendant may seek substitution of counsel to bring a motion for new trial, but that is different than using the *Marsden* motion itself as a substitute for a new trial motion.

performance.[9]  Despite the fact the evidentiary hearing had just taken place, defendant raised no concerns about his counsel's failure to present trial testimony or other evidence at the hearing, call or investigate witnesses, or make evidentiary objections.  Rather, defendant raised two other complaints: counsel had been too busy and did not dedicate enough time to his case; and counsel told his sister if "they" fired counsel, defendant would never get out of prison.  The court asked counsel about both complaints, counsel responded, and the trial court gave a thorough and well-reasoned explanation for denying the motion.

On appeal, defendant claims the trial court "did not make any inquiry whatsoever as to whether counsel had reviewed the testimony of Hardnett or others in the trial transcripts" or "ask counsel to respond to [defendant's] complaints that he failed to interview [his sister] and/or Hardnett or call them or [defendant] as witnesses at the evidentiary hearing."  However, those complaints were not raised in his third motion.  Rather, they were raised, in part, in his second *Marsden* motion, which he expressly withdrew.[10]

---

[9]  The trial court told defendant:  "So if you want to address any issues since the last Marsden hearing, I'm happy to hear from you very specifically as to why you believe that [counsel] cannot provide you with effective assistance of counsel.  And if you could be as specific as possible, take your time, and speak nice and slowly."  After defendant gave his reasons, the court repeatedly asked, "Anything else?," until defendant responded, "That's it, your Honor."  After the court asked counsel to respond, the court again allowed defendant to address the court and again confirmed defendant did not have "[a]nything else" to say.

[10]  In his second motion, defendant asserted his counsel did not have time for his case and had not *sent defendant* the trial transcripts because they were too bulky.  He did not claim counsel had not reviewed the transcripts.  Defendant also claimed his codefendants were "ready to testify."  He did not argue counsel had failed to investigate whether they would be appropriate witnesses or whether to call them.  And while defendant included

The court had no sua sponte duty to revisit those complaints, and even if it did, any failure to do so was harmless error. (See, e.g., *People v. Lloyd* (1992) 4 Cal.App.4th 724, 732 [failure to consider first *Marsden* motion was harmless error when defendant failed to reassert the reasons underlying the motion at a later hearing]; *People v. Vera* (2004) 122 Cal.App.4th 970, 980–982 [trial court did not err in conducting *Marsden* inquiry where the defendant abandoned his unstated complaints about counsel by failing to accept trial court's invitation to present them at a later hearing].)

The closest defendant came to raising any of the complaints in his second *Marsden* motion at the hearing on his third motion was complaining that his attorney had not devoted sufficient time to the case. In that context, he told the court that when he asked his counsel "have you read the trial transcripts or anything like that," counsel said he did not have time and had "too much on his plate." The trial court, in turn, specifically asked counsel whether he had enough time to provide adequate assistance, and counsel represented he had received the trial transcript, analyzed the jury instructions, and "went through it all."

Finally, defendant fails to demonstrate that counsel's failure to present Hardnett's testimony, or to interview or call Hardnett to testify at the evidentiary hearing, was ineffective assistance, particularly since Hardnett had testified at length at trial.[11] (See, e.g., *People v. Welch* (1999) 20 Cal.4th 701, 728–729 ["A defendant does not have the right to present a defense of his own choosing, but merely the right to an adequate and competent defense.

---

his own version of the facts of the case in his declaration supporting his second motion, he did not say he wanted to testify at the evidentiary hearing or state what other evidence supported his version of the facts.

[11] We grant defendant's unopposed request for judicial notice of Hardnett's trial testimony.

[Citation.] Tactical disagreements between the defendant and his attorney do not by themselves constitute an 'irreconcilable conflict.' "]; *People v. Penrod* (1980) 112 Cal.App.3d 738, 750 [decision to call witnesses is ordinarily a trial tactic within the attorney's control].) Contrary to defendant's characterization of Hardnett's trial testimony, it made no difference to defendant's culpability for the crimes. Hardnett testified only that he (Hardnett) panicked and stabbed the victim repeatedly because he thought the victim had a gun, but he was not aware of what defendant was doing and did not see defendant do anything. In short, Hardnett's testimony does not support defendant's version of the incident—that defendant acted in defense of Hardnett but disengaged from the fight before the victim was killed.

As for defendant's sister, her declaration in support of defendant's motion stated only that counsel had failed to ask her about "what happened on the night/morning of the incident at the heart of the . . . case" when counsel saw her at defendant's hearings and that she "believe[d]" she had unspecified information relevant to defendant's petition. This is not sufficient to show counsel was ineffective for failing to interview or call her as a witness.[12] (See *In re Noday* (1981) 125 Cal.App.3d 507, 522 [" 'To sustain a claim of inadequate representation by reason of failure to call a witness, there must be a showing from which it can be determined whether the testimony of the alleged additional defense witness was material, necessary, or admissible, or that defense counsel did not exercise proper judgment in failing to call [the witness].' "].)

---

[12] Nor is defendant's speculative and conclusory statement in his own declaration that his codefendants would testify he "was not the actual killer," "had no intent to kill anybody," and was "never . . . recklessly indifferent to human life," sufficient to show ineffective representation.

In sum, defendant has not shown the trial court failed to conduct an appropriate inquiry or abused its discretion in denying his *Marsden* motions.

### Denial of Resentencing Petition

Defendant next contends the trial court erred in denying his petition for resentencing for two reasons: (1) it is not clear whether the trial court made its findings beyond a reasonable doubt;[13] and (2) the trial court's findings are, in part, not supported by the record.

As to his first claim, defendant asserts that in ruling defendant was ineligible for resentencing the trial court did not "expressly indicate" it was making that finding beyond a reasonable doubt or state the prosecution had proven defendant guilty of murder beyond a reasonable doubt. Based on a review of the record as a whole, it is abundantly clear the trial court's findings were made under the "beyond a reasonable doubt" standard.

At the outset of the hearing, after noting it had reviewed the response to the order to show cause and reviewed the record, the trial court stated, "[T]*his is the People's burden to prove beyond a reasonable doubt* that [defendant] does not qualify for relief under the statute." (Italics added.) A short time later when the trial court asked if defendant had any argument about whether there was sufficient evidence based on the preliminary hearing transcript, defense counsel told the court: "Well, a preliminary hearing transcript establishes probable cause only. It does not establish *proof beyond a reasonable doubt which is the burden on the People at this particular hearing*, so in that regard it's insufficient." (Italics added.) And

---

[13] "At the hearing to determine whether the petitioner is entitled to relief, the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is guilty of murder . . . under California law as amended by the changes to Section 188 or 189 made effective January 1, 2019." (§ 1172.6, subd. (d)(3).)

16

again, right before ruling on the petition for resentencing, the trial court asked, "So is there anything further that the People want to argue in support of their position that they've shown *beyond a reasonable doubt* that [defendant] is not eligible for relief under the statute?" (Italics added.) The trial court then "found [defendant] was an active participant acting with the intent to kill" and found him ineligible for relief under the statute. On this record, we have no hesitation in concluding the trial court recognized and applied the appropriate legal standard, and acting as an independent fact finder, made its findings beyond a reasonable doubt. (See *People v. Stowell* (2003) 31 Cal.4th 1107, 1114 [" 'a trial court is presumed to have been aware of and followed the applicable law' "]; *People v. Cody* (2023) 92 Cal.App.5th 87, 110 [reading transcript as a whole, trial court correctly applied beyond reasonable doubt burden of proof at § 1172.6 evidentiary hearing].)

With respect to whether certain of the trial court's findings were supported by evidence in the record, defendant first argues the court erred because it stated it did not see any indication that felony murder or natural and probable consequences theories were presented at trial. Defendant asserts this rationale for finding him ineligible for resentencing is not supported by the record because the trial court did not have the trial transcripts, jury instructions, or closing arguments from trial before it when making its ruling. However, the trial court did have the preliminary hearing transcript and the testimony at that hearing amply supports the trial court's finding that defendant was actively engaged in stabbing the victim, encouraging others to stab him more, and was thus acting as a direct aider and abettor with the intent to kill.[14]

---

[14] Defendant concedes he is not challenging the trial court's reliance on the preliminary hearing transcript because no objection was made below.

17

Under a direct aider and abettor theory, the prosecution "must show that the defendant acted 'with knowledge of the criminal purpose of the perpetrator *and* with an intent or purpose either of committing, or of encouraging or facilitating commission of, the offense.' " (*People v. Gomez* (2018) 6 Cal.5th 243, 279.) The amendments to sections 188 and 189 did not alter the law regarding the criminal liability of direct aiders and abettors of murder. (*People v. Vargas* (2022) 84 Cal.App.5th 943, 953 (*Vargas*); *People v. Offley* (2020) 48 Cal.App.5th 588, 595–596.)

Section 1172.6, subdivision (a)(3) permits resentencing where a defendant "could not presently be convicted of murder . . . because of changes to Section 188 or 189 made effective January 1, 2019." Because the court found beyond a reasonable doubt defendant was guilty as a direct aider and abettor, and defendant does not challenge the sufficiency of the evidence supporting that finding, defendant was ineligible for resentencing. (See, e.g., *Vargas*, *supra*, 84 Cal.App.5th at pp. 954–955 [trial court finding that the defendant was ineligible for resentencing relief based on aiding and abetting theory of murder was supported by substantial evidence].)

Defendant additionally contends the trial court's finding that defendant, in attacking the victim, "urged others to stab the victim some more" is not supported by the record. Defendant argues the relevant testimony at the preliminary hearing was that his sister, not defendant, yelled, " 'Get him, Dee [(i.e., defendant)],' " during the stabbing attack on the victim. While defendant is correct about *that* statement, his ex- girlfriend also testified that as defendant and Hardnett stabbed the victim, defendant said to Hardnett: " 'Stab him in the throat so he can choke on his own blood.' " Thus, contrary to defendant's claim, the trial court's finding that

18

defendant "actually urged others to stab the victim some more" is supported by the evidence in the record.

## DISPOSITION

The orders denying defendant's *Marsden* motions and resentencing petition are affirmed.

_____
Banke, J.

We concur:


_____
Humes, P. J.


_____
Langhorne Wilson, J.


A166699
*People v. Eng*