[No. E052463. Fourth Dist., Div. Two. Oct. 22, 2012.]

THE PEOPLE, Plaintiff and Respondent, v.
FRANK THEODORE JONES III, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

*Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of part III.B.

**COUNSEL**

Alan S. Yockelson, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Gil Gonzalez, Eric A. Swenson and Charles C. Ragland, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

## HOLLENHORST, J.—

## I. INTRODUCTION

Defendant Frank Theodore Jones III appeals from his conviction of possession of rock cocaine for sale with a prior conviction for transporting a controlled substance (Health & Saf. Code, §§ 11351.5, 11352, subd. (a), 11370.2, subd. (a)) and active participation in a criminal street gang (Pen. Code, § 186.22, subd. (a)), with associated enhancements (Pen. Code, §§ 667.5, subd. (b), 667, subds. (c), (e), 1170.12, subd. (c)).

Defendant contends (1) the trial court erred in failing to conduct a hearing on his *Marsden*[1] motion and (2) the evidence was insufficient to sustain his conviction for active participation in a criminal street gang. We find no error, and we affirm.

## II. FACTS AND PROCEDURAL BACKGROUND

### A. *Prosecution Evidence*

Riverside Police Detective Matthew Lackey received information from a confidential informant that a man who was associated with the 1200 Blocc Crips gang and who used the moniker "Devil" was selling rock cocaine from a residence at 2259 12th Street. Other officers told Detective Lackey that defendant fit that description.

Officers began surveillance of the house and saw foot and vehicle traffic. On January 27, 2009, defendant and a woman, later identified as his girlfriend, Jaqualia Milo,[2] came out of the house and drove away in a Mazda with no license plates, which had been parked in the driveway. Officer Nick Kean conducted a traffic stop of the Mazda. Defendant gave the officer his identification and told the officer he was coming from his house at 2259 12th Street that he shared with Milo. He also informed the officer he was on parole. Officer Kean told defendant they would conduct a parole search of the house. Defendant then said the 12th Street house was not his paroled residence, and he did not actually live there. Defendant asked Officer Kean not to hurt his two dogs at the house. Defendant also asked Detective Lackey to watch out for his dogs in the backyard.

---

[1] *People v. Marsden* (1970) 2 Cal.3d 118 [84 Cal.Rptr. 156, 465 P.2d 44].

[2] Milo entered a plea of guilty to possessing cocaine base for sale (Health & Saf. Code, § 11351.5) and transporting cocaine base (Health & Saf. Code, § 11352, subd. (a)).

During a search of the house, officers located a baggie of rock cocaine weighing approximately 0.6 grams in the pocket of a child's jacket in the closet of a child's room. A pay/owe sheet was found in a cupboard in the headboard in the master bedroom, and paperwork with defendant's name and a wallet containing defendant's identification were found in a nightstand. Officers also found $1,016 in cash underneath some men's underwear in a drawer. Three baggies of rock cocaine weighing four grams and a digital scale were found in a box on top of the refrigerator. Milo was searched, and a baggie containing 0.8 grams of rock cocaine was found in her vagina.

Defendant had tattoos on his body, as follows: "Riverside" across his back; the number "2" and "Georgia" on the back of his left arm; the number "1" and "Street" on the back of his right arm; and a figure of a devil with the letters "D-E-V" on the outside of his right arm.

Detective Kevin Townsend testified as a gang expert. He testified that the Georgia Street Mob, or GSM, is a subset of the 1200 Blocc Crips gang located on the east side of Riverside. GSM is identified by the numbers "12" and "21," or the letters "G" or "GSM." 1200 Blocc is identified by the numbers "12" or "1200." He testified that it would be dangerous for a person who was not a gang member to claim gang affiliation because the gang would beat up or kill the person. The gang was responsible for "[v]andalism, robbery, weapons or firearm possession," and its "two primary activities are crimes of violence . . . and drug sales, specifically rock cocaine." The 1200 Blocc Crips gang was an ongoing gang in November 2008 and January 2009 and was currently ongoing at the time of trial.

Detective Townsend testified that defendant had a 1999 conviction for the sale of rock cocaine for the benefit of the 1200 Blocc Crips. Defendant had admitted membership in GSM about six times from 1993 to 2000, was in prison from 2000 to March 2008, and again admitted affiliation with GSM during a traffic stop in November 2008, when he was in the presence of a known gang member. Photographs found in a closet in the 12th Street house showed defendant in the company of other known 1200 Blocc members displaying their gang tattoos. The 12th Street house was within the 1200 Blocc gang's territory. Defendant had acquired two new tattoos since 1999: "Riverside" across his upper back, and "Devil" on his right arm. In 1999, defendant had admitted the gang moniker of "Devil." During his booking on the current charges, defendant again admitted gang membership and the moniker of "Devil." Defendant was in possession of rock cocaine and a large amount of cash, and rock cocaine sales were a primary activity of the 1200 Blocc Crips. Based on the above evidence, Detective Townsend testified that in his opinion, defendant was an active member of the gang.

### B. *Defense Evidence*

Defendant's parole agent testified that defendant actually lived with his uncle on Redfield Road, a block or two away from the 12th Street house, where the agent had visited him unannounced several times. Defendant had been compliant with the parole agent's instructions, and his level of supervision had been reduced to a middle level because of his reporting compliance, negative drug tests, and cooperation. He was allowed to visit his girlfriend's residence but could not stay there more than 48 hours at a time.

Defendant's uncle testified that defendant began living with him on Redfield Road in April 2008, and defendant was a changed person since his release from prison. Defendant had a job with a moving company and abided by the rules of the house, including no drugs, associates, heavy drinking, or partying.

### C. *Verdict and Sentence*

The jury found defendant guilty of possession of rock cocaine for sale (Health & Saf. Code, § 11351.5) and active participation in a criminal street gang (Pen. Code, § 186.22, subd. (a)). The trial court found true an allegation under Health and Safety Code section 11370.2, subdivision (a) and found that defendant had two prior serious felonies under Penal Code section 667.5, subdivision (b) and two prior strike convictions under Penal Code sections 667, subdivisions (c) and (e) and 1170.12, subdivision (c)(2)(A). The trial court sentenced defendant to a prison term of 25 years to life.

## III. DISCUSSION

### A. Marsden *Motion*

#### 1. *Additional Background*

During a status hearing on September 28, 2009, defendant stated he wanted to fire his lawyer. The court held a *Marsden* hearing, and defendant told the court the only paperwork he had received was a copy of the information, and he wanted to get discovery. Defendant's counsel stated the discovery defendant wanted would need to be redacted for defendant's own protection, because it contained information about other gang members who were codefendants, had committed the alleged predicate offenses, or had served as informants. Defense counsel stated he had discussed the general contents of the discovery with defendant. The trial court denied the *Marsden* motion but directed defense counsel to go through discovery with defendant.

On April 15, 2010, defendant filed a second *Marsden* motion asserting (1) his counsel had failed to file a motion under Penal Code section 995, and such a motion would have been meritorious because the trial court had improperly restricted cross-examination during defendant's motion to suppress evidence and (2) the evidence was insufficient to bind him over for trial on the gang allegation under Penal Code section 186.22, subdivision (b).[3] The trial court stated it would hear the motion on April 27.

On April 19, 2010, the prosecution moved to trail the jury trial to April 28, and defense counsel stipulated to the continuance. The April 22 minute order stated, "Hearing Set RE: MARSDEN." On April 28, defense counsel moved for a continuance of the "Jury Trial / Marsden Motion" to May 3. The minute order granting a continuance to May 7 again referred to the *Marsden* motion. On May 5, defense counsel requested a continuance of the "Jury Trial" until May 24, and the minute order for May 7 indicates a *Marsden* hearing was also set for May 24. Defense counsel requested a further continuance on May 24, and the hearing on the *Marsden* motion was continued to June 1. On June 1, counsel stipulated to continue the hearing to June 9. The June 9 minute order, like the others, stated "Hearing Set RE: MARSDEN." On that day, jury trial was set for June 14.

On June 14, 2010, trial was set for June 21, on defense counsel's motion. However, the minute order, and subsequent minute orders, did not refer to the *Marsden* motion. Defense counsel moved again to continue trial to July 7. The People moved to continue trial to August 16. Additional continuances were granted to August 19 and then August 20. On August 20, both the prosecutor and defense counsel announced they were ready for trial. The court assigned the case to a courtroom for trial to begin on Monday, August 23.

The minute orders indicate that defendant was present in court on April 22, April 28, May 7, May 24, June 1, June 9, June 14, June 21, July 7, August 16, and August 20, when the trial court ruled on requests for continuances. Defendant was also present on August 23 when the trial court heard pretrial motions and discussed jury selection procedures. The court informed defendant of his right to a jury trial on prior conviction allegations, confirmed his understanding of his right, and took defendant's waiver of that right on the record. The next morning, before the jury panel was called in, the trial court stated: "We've resolved most of the issues that counsel had brought before us. There was a couple of issues that counsel were thinking about, and so this

---

[3] On July 7, 2010, after defendant filed his *Marsden* motion, the information was amended to delete the gang enhancement allegation under Penal Code section 186.22, subdivision (b).

is the time. If anybody has anything else that they want to say, put it on the record, make a pitch, or whatever. So feel free." Defendant was present but remained silent.

### 2. *Analysis*

■ In *People v. Braxton* (2004) 34 Cal.4th 798 [22 Cal.Rptr.3d 46, 101 P.3d 994] (*Braxton*), our Supreme Court held that a defendant could forfeit the issue of the trial court's failure to hold a hearing on a motion for new trial "by failing to press for a hearing or by acquiescing in the court's failure to hear the new trial motion." (*Id.* at p. 814.) In that case, the court found the issue had not been forfeited because "[t]he trial court's failure to hear defendant's new trial motion was not the result of inadvertence; it resulted instead from the court's repeatedly stated decision not to entertain any oral motion for a new trial. Defendant did all that could reasonably be expected or required under the circumstances to obtain a hearing of his new trial motion." (*Ibid.*) The court also stated the general rule that "a party may not challenge on appeal a procedural error or omission if the party acquiesced by failing to object or protest under circumstances indicating that the error or omission was probably inadvertent. [Citations.]" (*Id.* at pp. 813–814.) The court continued, " ' "[i]n the hurry of the trial many things may be, and are, overlooked which would readily have been rectified had attention been called to them. The law casts upon the party the duty of looking after his legal rights and of calling the judge's attention to any infringement of them." ' [Citations.]" (*Id.* at p. 814.) Thus, when the trial court's failure to hold a hearing on a motion appears to have been inadvertent, this general rule applies. (*Id.* at p. 813.) As another court has explained, " ' "If any other rule were to obtain, the party would in most cases be careful to be silent as to his objections until it would be too late to obviate them, and the result would be that few judgments would stand the test of an appeal." ' [Citation.]" (*In re Seaton* (2004) 34 Cal.4th 193, 198 [17 Cal.Rptr.3d 633, 95 P.3d 896].)

■ In *People v. Vera* (2004) 122 Cal.App.4th 970 [18 Cal.Rptr.3d 896], the trial court conducted a *Marsden* hearing but failed to inquire into and evaluate each of the defendant's claims; however, the defendant failed to renew his motion when invited to do so. (*People v. Vera, supra,* at p. 981.) On appeal, the court stated, "Defendant's failure to take advantage of this offer can only be interpreted as an abandonment of his unstated complaints. [Citation.] While we are aware of no precedent finding abandonment of a *Marsden* motion, it is established that a defendant's conduct may amount to abandonment of a request to represent himself . . . . [Citations.] If a defendant can abandon his request to substitute himself for counsel, a defendant can abandon his request to substitute another counsel." (*Id.* at pp. 981–982.)

 Here, defendant raised the *Marsden* issue by filing a handwritten motion in April 2010. However, he never again brought the matter to the trial court's attention despite having been present in court a dozen times before his trial began. The trial court's failure to conduct a hearing on the motion appears to have been the inadvertent result of the repeated continuances.

Although *Braxton* did not deal with the trial court's failure to hold a hearing on a *Marsden* motion, the court's statement of the general rule of forfeiture by abandonment was not limited to the context of a motion for new trial. (*Braxton, supra*, 34 Cal.4th at pp. 813–814.) That general rule applies fully to the facts of this case. Defendant had the duty of bringing his motion to the trial court's attention at a time when the oversight could have been rectified. (*Ibid.*) We conclude defendant's failure to raise the issue before the matter proceeded to trial constituted abandonment of his claim.

B. *Sufficiency of the Evidence**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## IV. DISPOSITION

The judgment is affirmed.

Ramirez, P. J., and King, J., concurred.

Appellant's petition for review by the Supreme Court was denied January 23, 2013, S206933.

---

*See footnote, *ante*, page 355.