Filed 12/19/24  P. v. Jaime CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>JESSE JAIME, SR.,<br><br>    Defendant and Appellant. | F085616<br><br>(Super. Ct. No. MCR062554)<br><br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Madera County.  Brian Austin, Judge.

Tonja R. Torres, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Louis M. Vasquez and Ian Whitney, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

## INTRODUCTION

Appellant Jesse Jaime, Sr., was convicted of multiple counts arising from the continual sexual abuse of his biological daughter and stepdaughter when they were children. Appellant argues that the trial court abused its discretion when it permitted the People to amend the information at the conclusion of the People's case-in-chief and the trial court erred when it failed to hold a *Marsden*[1] hearing in response to appellant's written request.

We reverse the sentence and remand for correction of the oral pronouncement of judgment, but in all other respects, the judgment is affirmed.

## PROCEDURAL HISTORY

On September 26, 2022, the District Attorney of Madera County filed a third amended information charging appellant with sexual intercourse or sodomy with a child 10 years old or younger (Pen. Code,[2] § 288.7, subd. (a); count 1), oral copulation or sexual penetration with a child 10 years old or younger (§ 288.7, subd. (b); count 2), aggravated sexual assault of a child (§ 269, subd. (a)(1); count 3), lewd act upon a child (§ 288, subd. (a); counts 4, 5, 7, 8), oral copulation of a person under age 14 (§ 287, subd. (c)(1); count 6), rape of an unconscious or asleep person (§ 261, subd. (a)(4)(A); count 9), and sexual penetration of unconscious or asleep person (§ 289, subd. (d)(1); count 10).

The third amended information further alleged appellant suffered a prior serious or violent felony conviction constituting a strike pursuant to section 667, subdivisions (b) through (i) and aggravating circumstances pursuant to section 667.61, subdivisions (a), (b), (c)(4), (d)(1), and (e). Finally, the third amended information alleged four aggravating factors pursuant to California Rules of Court, rule 4.421(a)(3), (a)(11), (b)(1), and (b)(3).

---

[1] *People v. Marsden* (1970) 2 Cal.3d 118 (*Marsden*).

[2] Undesignated statutory references to code are to the Penal Code.

On September 29, 2022, a jury found appellant guilty of counts 1 through 8 and found true all aggravating circumstances and factors. A probation report filed October 25, 2022, recommended the following sentence: 50 years to life on count 1 pursuant to section 667, subdivision (e)(1); 15 years to life on counts 2 and 3, doubled to 30 years to life pursuant to section 667, subdivisions (b) through (i); and 25 years to life for counts 4 through 8 pursuant to section 667.61, subdivision (d)(1), doubled to 50 years to life pursuant to section 667, subdivision (e)(1), all to run consecutively. The report concluded the aggregate term to be 235 years to life.

On January 10, 2023, the trial court orally pronounced a sentence of 234 years to life in prison. A minute order issued January 10, 2023, indicates appellant's sentence to be 235 years to life. An abstract of judgment filed January 19, 2023, indicates a sentence of 30 years to life on counts 2 and 3 and 50 years to life on counts 1 and 4 through 8, running consecutively. A review of the abstract of judgment indicates an actual aggregate term of 360 years to life. Appellant was also awarded 1,584 presentence credits.

## STATEMENT OF FACTS

In 1984, appellant was living with his cousins, including then 9-year-old Jesse P., and six-year-old David P. One day, appellant was babysitting the cousins while their parents were away, and Jesse saw appellant and David exit a shed in the backyard. Jesse asked David if appellant was "touching" him, and David asked Jesse not to tell " '[b]ecause the Easter bunny won't bring me an Easter basket.' " Jesse's mother reported the incident to police.

On March 18, 1986, appellant was convicted of child molestation in violation of section 288, subdivision (a). On November 22, 1988, appellant was paroled and released from prison. Appellant was subsequently returned to and released from custody until sometime after 2004.

Alexis Doe, appellant's biological daughter, was 31 years old when she testified. She initially saw appellant sometime in 2007, along with her stepmother Jerri L., when

3.

appellant got out of prison. Upon seeing appellant, Alexis recognized the spider tattoo on his hand and web tattoo on his elbow and remembered hands with those tattoos sexually abusing her when she was four or five years old.

Alexis remembered appellant making her hand touch his penis and appellant touching her vagina. She also remembered a time when she was wearing a shirt and no pants or underwear, and appellant placed her on top of him and had her "grinding back and forth."

When Alexis was 15 or 16 years old, she moved into appellant's house. She lived with her sisters, including Alyssa Doe, appellant, Jerri, brothers, and appellant's mother and father. However, Jerri, the other children, and appellant's mother moved out around that time, leaving Alexis with appellant and appellant's father.

One night, Alexis came home intoxicated and woke up in her room with appellant on top of her. She remembered being held down and "a lot of pressure," and blacked out again. When she woke up, she remembered her vagina hurting.

Alexis also observed one incident where she crossed Alyssa's room to get to the bathroom and saw Alyssa sleeping. Appellant was in boxers with his hands in the blanket where Alyssa was covered. Another time, Alexis saw Alyssa in appellant's room, underneath the covers with no shirt on. Appellant was sitting on the bed in his boxers with no shirt.

Appellant is Alyssa's stepfather, and she lived with him from about the time she was 10 months old until she was in eighth grade. During that time, appellant sexually abused Alyssa over 100 times, including sexual intercourse with her 15 to 20 times before she turned seven, and 100 to 150 times between the ages of seven and 12. Sometimes, the abuse happened at night when Alyssa's other siblings were asleep, when appellant woke her up and carried her into his bedroom. Other times, appellant called Alyssa into another room, the "game room," away from her siblings.

4.

Alyssa testified it hurt when appellant sexually abused her, but when she told appellant it hurt, he continued anyway. Alyssa cried during the assaults and tried to move away, but appellant dragged her back by her legs. Alyssa estimated this happened between 50 and 55 times when she was between the ages of six and 12.

When Alyssa was 12 years old, she told appellant to stop, and he complied. However, when she was 16 or 17 years old, appellant began to physically touch her again. Alyssa believed that if she did not do something, it would be "something more," so she told her mother and Alexis about appellant's abuse. Alyssa did not tell anyone about the abuse earlier because, when she was younger, appellant threatened that he would "do something" to her family if she ever told anyone.

Appellant did not present any witnesses and rested on the state of the evidence.

## DISCUSSION

### I.     The Trial Court Did Not Abuse Its Discretion When It Permitted the People to Amend the Information

Appellant argues the trial court abused its discretion when it permitted the People to amend the information a third time at the conclusion of its case-in-chief based on the trial testimony. We find that evidence adduced at the preliminary hearing gave appellant sufficient notice of the amended charge and the trial court did not abuse its discretion permitting the People's amendment.

### A. Background

In the second amended information, filed September 6, 2022, count 3 alleged that appellant committed a lewd act upon a child under age 14, in violation of section 288, subdivision (a), against Alyssa between December 13, 2005, and December 12, 2012.

On September 26, 2022, the People filed a third amended information, amending count 3 to allege that appellant committed aggravated sexual assault of a child, rape by force in violation of section 261, subdivision (a)(2), in violation of section 269, subdivision (a)(1), against Alyssa between December 13, 2005, and December 12, 2014.

5.

Appellant objected, arguing that he had been working off of the allegations in the second amended information throughout the trial and there was no preliminary hearing on the amended count in the third amended information. Appellant argued the amendment violated his due process rights because he did not have an opportunity to address the charges.

The People cited *People v. Bolden* (1996) 44 Cal.App.4th 707, 716 and argued that so long as the evidence supporting the amended charge was presented at the preliminary hearing, the amendment could occur even during jury deliberation. The trial court noted as long as the amendment was based on what was shown in the preliminary hearing, it was appropriate and overruled the objection.

*Preliminary Hearing Evidence*

Detective Manuel Chavez testified at the preliminary hearing regarding his interview of Alyssa. Alyssa spoke with Chavez when she was 17 years old and disclosed a number of specific incidents where appellant sexually abused her. In relevant part, Alyssa told Chavez that appellant took her into the "game room" where he placed her on an upside-down toddler chair to elevate her pelvic region and had sexual intercourse with her. Alyssa told Chavez she said it hurt, but appellant did not stop. Alyssa was in seventh grade at the time. Alyssa also told Chavez there were times where appellant either put her face against a pillow or put a sock in her mouth because it hurt so bad while he was having sexual intercourse with her.

Alyssa said most of the time, the sex acts consisted of appellant going into her room, picking her up, taking her into his room, undressing her, and having sex with her. Chavez asked her how many times this happened, but she said it happened so often that she could not give Chavez a definite answer.

**B. Legal Standard**

"Article I, section 14 of the California Constitution requires that '[f]elonies shall be prosecuted as provided by law, either by indictment or, after examination and

commitment by a magistrate, by information.'  This constitutional requirement means a person may not be prosecuted 'in the absence of a prior determination of a magistrate or grand jury that such action is justified.'  [Citation.]  'Before any accused person can be called upon to defend himself on any charge prosecuted by information, he is entitled to a preliminary examination upon said charge, and the judgment of the magistrate before whom such examination is held as to whether the crime for which it is sought to prosecute him has been committed, and whether there is sufficient cause to believe him guilty thereof.  These proceedings are essential to confer jurisdiction upon the court before whom he is placed on trial.' "  (*People v. Calhoun* (2019) 38 Cal.App.5th 275, 303, second bracketed insertion added (*Calhoun*).)

"Due process requires that 'an accused be advised of the charges against him so that he has a reasonable opportunity to prepare and present his defense and not be taken by surprise by evidence offered at his trial.'  [Citation.]  A defendant therefore cannot be prosecuted for an offense not shown by the evidence at the preliminary hearing or not arising out of the transaction upon which the commitment was based.  [Citations.]  Phrased somewhat differently, the rule is, '[a]n information which charges the commission of an offense not named in the commitment order will not be upheld unless (1) the evidence before the magistrate shows that such offense was committed [citation], and (2) that the offense "arose out of the transaction which was the basis for the commitment" on a related offense.' "  (*Calhoun, supra*, 38 Cal.App.5th at p. 303, third bracketed insertion in original.)

Section 288, subdivision (a) states:  "Except as provided in subdivision (i), a person who willfully and lewdly commits any lewd or lascivious act, including any of the acts constituting other crimes provided for in Part 1, upon or with the body, or any part or member thereof, of a child who is under the age of 14 years, with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of that person or the child,

7.

is guilty of a felony and shall be punished by imprisonment in the state prison for three, six, or eight years."

Section 269, subdivision (a)(1) states: "Any person who commits any of the following acts upon a child who is under 14 years of age and seven or more years younger than the person is guilty of aggravated sexual assault of a child: [¶] (1) Rape, in violation of paragraph (2) or (6) of subdivision (a) of section 261." Section 261, subdivision (a)(2) states: "Rape is an act of sexual intercourse … [¶] … [¶] … accomplished against a person's will by means of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the person or another."

" 'Force' includes circumstances where the victim did not want to engage in the act and the evidence does not otherwise establish the victim's positive cooperation in act or attitude. [Citation.] It also includes the force used to accomplish 'the penetration and the physical movement and positioning of [the victim's] body in accomplishing the act.' " (*People v. Thomas* (2017) 15 Cal.App.5th 1063, 1071, first bracketed insertion added.)

" 'The questions of whether the prosecution should be permitted to amend the information and whether continuance in a given case should be granted are matters within the sound discretion of the trial court and its ruling will not be disturbed on appeal absent a clear abuse of discretion.' " (*People v. Hamernik* (2016) 1 Cal.App.5th 412, 424.)

**C. Analysis**

Appellant argues the variance between the evidence presented at trial and the evidence presented at the preliminary hearing was material and deprived appellant of notice of the charge of aggravated sexual assault of a child pursuant to section 269, subdivision (a)(1). Appellant focuses on the fact that Alyssa testified appellant dragged her by her legs to continue sexual conduct, but that fact was not adduced at the preliminary hearing. Appellant concludes the new charge "changed the trial's 'trajectory' " and caught defense counsel by surprise. Appellant relies on *People v. Pitts*

(1990) 223 Cal.App.3d 606 (*Pitts*) and *People v. Burnett* (1999) 71 Cal.App.4th 151 (*Burnett*) in support of his argument.

*Pitts* involved seven defendants and over 50 charges for the ongoing sexual abuse of multiple minors and the production of child pornography. (*Pitts, supra*, 223 Cal.App.3d at pp. 894–901.) Many of the charges alleged were singular acts committed against a specific victim at a specific time. (*Ibid.*) As this court explained, "[T]he convictions were supported by evidence sufficiently specific as to time, place or circumstance." (*Id.* at p. 902.) As a result, a due process issue existed where "many of the specific offenses of which defendants were convicted were not shown by evidence adduced at the preliminary hearings." (*Ibid.*)

This court noted that *People v. Jones* (1990) 51 Cal.3d 294 found nonspecific or generic testimony of ongoing sexual abuse, in which the victim fails to specify the precise date, time, place or circumstance, may constitute substantial evidence to sustain a conviction. (*Pitts, supra*, 223 Cal.App.3d at p. 902.) However, the issues in *Pitts* were "not merely one of election or jury unanimity, but whether defendants received adequate notice of the acts against which they might be called upon to defend" and that "defendants were ultimately forced to defend against offenses not shown at the preliminary hearing." (*Ibid.*)

Unlike in *Pitts*, in this case, appellant was charged by second amended information in count 3 with a "Lewd Act Upon A Child Under Age 14 in violation of Penal Code section 288[, subdivision ](a)" against Alyssa "between December 13, 2005 and December 12, 2012." This was not limited to one specific act at a specific date and time. Rather, the charge arose out of the ongoing sexual abuse of Alyssa, including painful sexual intercourse, and sexual intercourse where appellant physically picked up Alyssa and took her into his room, undressed her, positioned her, and had sexual intercourse with her. Alternatively, appellant called her into the "game room" where he positioned her on a toddler chair and had sexual intercourse with her. This occurred so

9.

often that Alyssa could not say how many times it happened. Thus, appellant had notice of any charges which might be supported by the evidence of this ongoing abuse, including a charge pursuant to section 269, subdivision (a)(1), aggravated sexual assault of a child.

In *Burnett*, Burnett was convicted of being a felon in possession of a firearm and brandishing a firearm, both offenses alleged to have occurred on the same day. (*Burnett, supra*, 71 Cal.App.4th at p. 156.) Count 1 specifically alleged Burnett possessed a " '.38[-]caliber revolver.' " (*Ibid.*) On the first day of trial, the trial court granted the People's motion to amend the information to strike the words " '.38[-]caliber' " from count 1. (*Ibid.*)

Burnett argued he was tried for an offense not shown by the evidence at the preliminary hearing. (*Burnett, supra*, 71 Cal.App.4th at p. 164.) The preliminary hearing addressed an incident in which Burnett allegedly possessed and brandished a .38-caliber revolver, but no evidence was shown at the hearing that Burnett possessed any other gun. (*Ibid.*) However, Burnett was convicted of possessing a .357-caliber revolver in a separate incident. (*Ibid.*)

The appellate court found error, noting that "the evidence presented at the preliminary hearing showed only one incident, … and the prosecutor initially tried the case on the theory [Burnett] had possessed a single gun …. The jury, however, was ultimately informed [Burnett] had possessed two different guns and could be convicted based on *either* the Wallace/Weighill incident *or* on the discrete incident described by Daniels."[3] (*Burnett, supra*, 71 Cal.App.4th at p. 167.)

The appellate court concluded:

> "It is one thing to hold, as do the cases upon which the dissent relies, that as a matter of due process, a defendant may be convicted of any

---

[3]   The "Wallace/Weighill" incident was presented at the preliminary hearing, and the "incident described by Daniels" was adduced at trial. (*Burnett, supra*, 71 Cal.App.4th at pp. 164, 167.) Daniels did not testify at the preliminary hearing. (*Id.* at p. 164.)

offense of which he or she is given notice by the information combined with the preliminary hearing and other discovery. It is another thing altogether to hold that a defendant may be convicted upon proof of any incident giving rise to the same 'offense' as charged in the information and shown at the preliminary hearing, regardless of the absence of connection between the proven incident and that shown at the preliminary hearing. We cannot believe the rule that a defendant 'has no right to notice of the specific time or place of an offense, so long as it occurred within the applicable limitation period' (*People v. Jones, supra*, 51 Cal.3d at p. 317), stated in the context of generic testimony in cases of ongoing sexual abuse, was meant to include the situation where the prosecution changes horses in midstream by substituting a different 'act' for the *single* 'act' described by the evidence at the preliminary hearing." (*Burnett, supra*, 71 Cal.App.4th at p. 176, italics added.)

Much like *Pitts*, in *Burnett*, Burnett faced charges based on a specific act, at a specific time, committed against a specific victim. In this case, appellant's charge in count 3 arises out of generic testimony about ongoing sexual abuse, distinguishable from *Burnett* in that multiple acts committed by appellant during the specified time period support the charge of aggravated sexual assault of Alyssa.

Appellant argues that the inconsistencies between the evidence of the sexual abuse adduced at the preliminary hearing and Alyssa's trial testimony were material to the issue of notice. "Inconsistencies and contradictions during the course of thorough cross-examination of child witnesses at trial is not persuasive of appellant's contention that the incidents at trial were completely different from the incidents described at the preliminary hearing. The inconsistencies went to the weight and credibility of the testimony, not to the question of notice claimed by appellant." (*People v. Gil* (1992) 3 Cal.App.4th 653, 659.)

Appellant argues the People elected an act in support of count 3, specifically that appellant dragged Alyssa by the legs to continue having sexual intercourse with her. " '[I]f one criminal act is charged, but the evidence tends to show the commission of more than one such act, "*either* the prosecution must elect the specific act relied upon to prove the charge to the jury, *or* the court must instruct the jury that it must unanimously

11.

agree that the defendant committed the same specific criminal act." ' " (*People v. Brown* (2017) 11 Cal.App.5th 332, 341.)  "The prosecution can make an election by 'tying each specific count to specific criminal acts elicited from the victims' testimony'—typically in opening statement and/or closing argument." (*Ibid.*)  In this case, the People opted for an unanimity instruction.[4]  The instruction read:

> "[Appellant] is charged with aggravated sexual assault with a child under 14 upon Alyssa as charged in Count [3] sometime during the period of December 13th, 2005, and December 12, 2014.

> "[¶] … [¶]

> "The People have presented evidence of more than one act to prove that [appellant] committed these offenses.  You must not find [appellant] guilty unless:

> "One, you all agree that the People have proved that [appellant] committed at least one of these acts and all—and you all agree on which acts he committed for each offense;

> "or two, you must all agree that the People have proved that [appellant] committed all the acts alleged to have occurred during this time period."

Because an unanimity instruction was given, the People need not have elected a specific act to prove the charge in count 3, and neither the third amended information nor the record supports a conclusion that the People did elect such an act.

The evidence before the magistrate at the preliminary hearing showed that appellant committed aggravated sexual assault of Alyssa when he raped her as defined by section 261, subdivision (a)(2) between December 13, 2005, and December 12, 2012. There is no dispute that Alyssa was under the age of 14, that appellant was at least 7 years older than her, or that he had sexual intercourse with her.

---

[4]      At trial, appellant agreed the unanimity instruction, CALCRIM No. 3501, was "appropriate," and the trial court thought "it was appropriate" and "could be helpful to the jury."

12.

In *Thomas*, the appellate court found, "A reasonable jury could find that the sexual penetration was committed against [the minor's] will and that [Thomas] used sufficient force to overcome her will by leading her by the hand into the bathroom, positioning her body on the sink before digitally penetrating her." (*People v. Thomas, supra*, 15 Cal.App.5th at p. 1072.) The evidence adduced in this case at the preliminary hearing shows Alyssa told appellant the sexual intercourse hurt, but he did not stop, and that appellant physically carried Alyssa to another room and positioned her for sexual intercourse. This was sufficient to support the element that the sexual intercourse was accomplished against Alyssa's will by means of force and put appellant on notice that he could be charged with aggravated sexual assault of a child. (§§ 261, subd. (a)(2), 269, subd. (a)(1).) That the duplicative evidence of force, the dragging, was adduced at trial but not at the preliminary hearing does not change the fact that the evidence presented at the preliminary hearing was sufficient to support a finding that appellant used force to commit the sexual intercourse, and thus placed appellant on notice he could be charged with the offense at any time.

Finally, count 3 in the third amended information arose out of the same course of sexual abuse against Alyssa and thus the same "transaction" as count 3 in the second amended information. (*Calhoun, supra*, 38 Cal.App.5th at p. 303.) Therefore, the trial court did not abuse its discretion permitting the People to amend the information to charge appellant with aggravated sexual assault of a child, and appellant's due process rights to sufficient notice of the charge were not violated.

## II. The Trial Court Did Not Violate Appellant's Sixth and Fourteenth Amendment Rights When It Failed to Hold a *Marsden* Hearing

Appellant argues the trial court violated his constitutional rights when it failed to hold a *Marsden* hearing in response to his written request filed August 1, 2022. We find appellant abandoned his request when he failed to press the court for a hearing until after the trial had concluded.

### A. Background

On February 14, 2022, appellant filed his first *Marsden* motion. Part of the motion was a form application, part was handwritten. In the form portion of the motion, appellant alleged that due to conflicts with his counsel, he would not receive adequate representation.

Appellant checked boxes indicating counsel failed or refused to confer with appellant concerning preparation of the defense, communicate with appellant, subpoena witnesses favorable to the defense and deprived appellant of the testimony critical to his defense, perform investigation critical and necessary to the defense, prepare an affirmative defense at appellant's preliminary hearing, prepare and file motions critical to the defense, impeach prosecution witnesses, and declare prejudice or conflict against appellant and due to said failure, took on the role of a surrogate prosecutor.

In the written portion of the motion, appellant stated he told his attorney he is 50 percent hearing impaired and needed headphones to hear, but his attorney just looked at him. Appellant stated he sent his attorney a letter complaining about the treatment he received due to his disability. Appellant also stated he "should [have] been done 2 years ago" (capitalization omitted) and his attorney should not be able to use Covid as an excuse.

Appellant further stated he sent his attorney seven letters and left him three voice messages, but his attorney did not respond. Appellant stated his attorney did not review certain videos with incriminating testimony with appellant. His attorney missed five hearings, and in the 34 months appellant had been in custody, his attorney only visited him twice. Finally, appellant stated he had three or four witnesses he needed his attorney to speak with or subpoena, one whose testimony was vital to his defense.

A *Marsden* hearing was held on February 22, 2022, and appellant was appointed new counsel, Marjorie Sheldon. On March 1, 2022, the trial court held a status

conference. Sheldon was present representing appellant and stated she went to the jail on Sunday[5] and spoke with appellant, she felt they were on the same page going forward.

On April 12, 2022, the trial court held a jury trial assignment hearing. Appellant was present and represented by a substitute attorney from the same firm as Sheldon, Ana Nino, and the matter was continued.

On May 10, 2022, the trial court held a jury trial assignment hearing. Appellant was present and represented by Nino. The matter was again continued.

On June 7, 2022, the trial court held a jury trial assignment hearing. Appellant was present and represented by Sheldon. Both the People and Sheldon indicated they were in trial, and the matter was continued.

On June 21, 2022, the trial court held a jury trial assignment hearing. Appellant was present and represented by Sheldon. The trial court noted it could not provide appellant with a courtroom, and the matter was continued.

On July 19, 2022, the trial court held a jury trial assignment hearing. Appellant was present and represented by Sheldon. The trial court again noted it could not "assign jury trial," and the People requested a continuance. The matter was continued.

On August 1, 2022, appellant filed a second *Marsden* motion. Part of the motion was a form application, part was handwritten. In the form portion of the motion, appellant again alleged that due to conflicts with his counsel, he would not receive adequate representation. Appellant checked all of the same boxes as the previous motion.

In the handwritten portion, appellant claimed that his attorney "told the judge on [March 1, 2022] at my hearing, Judge Licalsi (denied) my motion. He did not, he upheld my motion until [March 1, 2022]. She lied to the Judge on [March 1, 2022.]" (Some capitalization omitted.) Appellant claimed that his counsel told him she would speak to him but did not, she did not show up to his court hearings, and when she did show up to court hearings, she did not speak to him. Appellant also complained about the

---

[5]     March 1, 2022, was a Tuesday. The prior Sunday was February 27, 2022.

15.

performance of his prior attorney and repeated the claim that he had three to four witnesses he needed subpoenaed, one vital to his defense.

The trial court held a jury trial assignment hearing on August 2, 2022, where the People and appellant indicated they were ready for trial. The People and appellant, represented by Sheldon, filed motions in limine on August 3, 2022, which were heard on August 3, 9, and 10, 2022.

Appellant's jury trial began on August 15, 2022. Minute orders indicate between August 15, 2022, and the conclusion of both the trial on the charges and the bifurcated trial on the special allegations on September 30, 2022, appellant made 20 appearances, and Sheldon was present at each appearance representing appellant. The record does not indicate appellant made any complaints about counsel throughout the trial.

On October 12, 2022, appellant sent the trial court a letter asking about the outcome of his second *Marsden* motion. The trial court responded, "The Court received your *Marsden* Motion filed on August 1, 2022. The *Marsden* Motion was not addressed on the hearing date of August 2, 2022." (Italics added.) The trial court then indicated it was sending appellant a courtesy copy of the minute order for the *Marsden* motion filed on February 14, 2022.

The trial court held subsequent hearings on October 31, 2022, and December 5, 2022, and finally sentenced appellant on January 10, 2023. On December 19, 2022, Sheldon filed a sentencing memorandum on behalf of appellant. Appellant was present and represented by Sheldon at each hearing and made no further *Marsden* motion or complaint about his counsel's representation.

**B. Legal Standard**

"[A]t any time during criminal proceedings, if a defendant requests substitute counsel, the trial court is obligated, pursuant to our holding in *Marsden*, to give the defendant an opportunity to state any grounds for dissatisfaction with the current appointed attorney. [Citation.] In turn, if the defendant makes a showing during a

*Marsden* hearing that his right to counsel has been ' " 'substantially impaired' " ' [citation], substitute counsel must be appointed as attorney of record for all purposes [citation]." (*People v. Sanchez* (2011) 53 Cal.4th 80, 90, fn. omitted.)  Generally, denial of a *Marsden* hearing "is legal error that compels reversal of the defendant's conviction unless the record shows beyond a reasonable doubt that the error was harmless." (*People v. Armijo* (2017) 10 Cal.App.5th 1171, 1179 (*Armijo*).)

However, when a trial court's failure to hold a hearing is inadvertent and a defendant fails to press for a hearing, a defendant can abandon his request to substitute another counsel.  (*People v. Jones* (2012) 210 Cal.App.4th 355, 361 (*Jones*); see also *People v. Vera* (2004) 122 Cal.App.4th 970, 982 (*Vera*).)

**C. Analysis**

Appellant argues he did not abandon the second *Marsden* motion, relying on *Armijo, supra*, 10 Cal.App.5th 1171.  Appellant contends the record does not show his trial counsel knew he filed a second *Marsden* motion and there were grounds for appellant to believe it would have been futile to ask the court to appoint new counsel.

In *Vera,* the trial court denied Vera's *Marsden* motion without prejudice to renew it after Vera's attorneys were given an opportunity to file certain motions and investigate the case.  (*Vera, supra*, 122 Cal.App.4th at p. 976.)  Vera never renewed the *Marsden* motion, despite several subsequent hearings followed by Vera accepting a plea.  (*Id.* at pp. 976–977.)  The appellate court found Vera had abandoned his *Marsden* motion when the trial court offered Vera the opportunity for further hearing and Vera failed to take advantage of the offer.  (*Id.* at p. 981.)

In *Jones,* much like in this case, Jones filed a *Marsden* motion early in the case, arguing his attorney had not reviewed discovery with him.  (*Jones, supra*, 210 Cal.App.4th at p. 359.)  The trial court denied the motion but directed counsel to review discovery with Jones.  (*Ibid.*)  Seven months later, Jones filed a second *Marsden* motion asserting a number of deficiencies in his counsel's representation.  (*Id.* at p. 360.)

17.

The motion was trailed several times, and two months later, forgotten. (*Ibid.*) The matter proceeded to trial, and Jones was convicted without ever referencing his prior *Marsden* motion. (*Id.* at pp. 360–361.)

The appellate court concluded Jones abandoned his second *Marsden* motion. "Here, [Jones] raised the *Marsden* issue by filing a handwritten motion in April 2010. However, he never again brought the matter to the trial court's attention despite having been present in court a dozen times before his trial began. The trial court's failure to conduct a hearing on the motion appears to have been the inadvertent result of the repeated continuances." (*Jones, supra*, 210 Cal.App.4th at p. 362.)

The "general rule of forfeiture by abandonment [is] not limited to the context of a motion for new trial. [Citation.] That general rule applies fully to the facts of this case. [Jones] had the duty of bringing his motion to the trial court's attention at a time when the oversight could have been rectified. [Citation.] We conclude [Jones]'s failure to raise the issue before the matter proceeded to trial constituted abandonment of his claim." (*Jones, supra*, 210 Cal.App.4th at p. 362.)

In *Armijo*, Armijo sent two letters to the trial court, on February 2, 2015, and on April 16, 2015, expressing concern about his trial counsel and requesting appointment of new counsel. (*Armijo, supra*, 10 Cal.App.5th at pp. 1175–1177.) The second letter was received and file-stamped April 24, 2015. (*Id.* at p. 1177.) After sending the second letter, there were four appearances—on April 21, 2015, May 7, 2015, May 12, 2015, and June 3, 2015. (*Ibid.*) The trial court did not schedule any *Marsden* hearings, and on June 23, 2015, Armijo entered a plea of no contest to attempted murder and admitted great bodily injury and prior strike allegations. (*Ibid.*)

18.

The appellate court found the trial court erred by not holding a hearing on Armijo's *Marsden* request.[6] (*Armijo, supra*, 10 Cal.App.5th at p. 1180.) The court further found that Armijo did not abandon his request. (*Id.* at p. 1182.) In declining to apply *Jones,* the appellate court noted first, there was no indication from the record that Armijo's counsel knew Armijo had sent the letter. (*Id.* at pp. 1182–1183.) Second, the court found "it seems quite possible that Armijo did not raise the *Marsden* issue at the April 21, 2015 pretrial conference out of a mistaken belief that the court already had received his second letter (it was not received until Apr. 24) and denied the request he made therein to discharge [his counsel], which may have suggested to Armijo that it would have been futile to ask the court at that point to appoint new counsel." (*Id.* at p. 1183.)

In *Armijo*, only four appearances separated Armijo's second letter requesting a *Marsden* hearing and his plea of no contest. (*Armijo, supra*, 10 Cal.App.5th at p. 1177.) In this case, appellant filed his second *Marsden* motion on August 1, 2022, followed by over 20 appearances, including a 16-day jury trial. Appellant's previous *Marsden* motion had resulted in a hearing and a substitution of counsel, so appellant necessarily had some understanding of what a *Marsden* motion should entail. He made no complaints about his representation until after he was convicted. This alone is sufficient to find appellant abandoned his second *Marsden* motion, as the procedural circumstances are comparable to *Jones* and not to *Armijo*.

Likewise, after appellant sent a letter to the trial court, he was informed on October 19, 2022, that there had been no hearing on his *Marsden* motion. The trial court's return letter does not state that the motion was denied, only that it "was not addressed on the hearing date of August 2, 2022." After receiving this letter, appellant

---

[6]     Specifically arising out of the second letter, because Armijo was appointed new counsel for unrelated reasons after sending his first letter to the trial court. (*Armijo, supra*, 10 Cal.App.5th at p. 1180.)

made no attempt to renew his *Marsden* motion, and Sheldon proceeded to represent him at two subsequent hearings and ultimately on January 10, 2023, at sentencing.

Appellant "had the duty of bringing his motion to the trial court's attention at a time when the oversight could have been rectified." (*Jones, supra*, 210 Cal.App.4th at p. 362.) His failure to raise the issue through trial and sentencing constituted abandonment of the claim.

### III.  Remand Is Necessary to Correct the Oral Pronouncement of Judgment

Generally, the oral pronouncement of a sentence controls when it conflicts with the written record. (*People v. Mitchell* (2001) 26 Cal.4th 181, 185–186.) Conflicting records should be harmonized if possible (*People v. Harrison* (2005) 35 Cal.4th 208, 226), but if they cannot be, the circumstances of the case determine which prevails. (*People v. Contreras* (2015) 237 Cal.App.4th 868, 880.) In matters where the trial court's intention is ambiguous, we do not substitute our judgment for the trial court's. (See *People v. Price* (2004) 120 Cal.App.4th 224, 243.)

Appellant was convicted of the following violations: section 288.7, subdivision (a) in count 1, which carries a sentence of 25 years to life, doubled pursuant to section 667, subdivision (e)(1)[7] to 50 years to life; section 288.7, subdivision (b) in count 2, which carries a sentence of 15 years to life, doubled to 30 years to life; section 269, subdivision (a)(1) in count 3, which carries a sentence of 15 years to life, doubled to 30 years to life; section 288, subdivision (a) in counts four, five, seven and eight, which carry sentences of 25 years to life pursuant to section 667.61, subdivision (a), doubled to 50 years to life; and section 287, subdivision (c)(1) in count 6, which carries a sentence of 25 years to life pursuant to section 667.61, subdivision (a), doubled to 50 years to life.

---

[7]  The section 667, subdivision (e)(1) prior serious or violent felony conviction strike enhancement applies to all eight of the charges of which appellant was found guilty.

In total, appellant's aggregate sentence as reflected in the abstract of judgment filed January 19, 2023, is 360 years to life.  However, the probation report filed October 25, 2022, indicated the above calculated penalties but recommended a sentence of 235 years to life.  On January 10, 2023, the trial court orally pronounced each of the above calculations as to each count, but then relying on the probation report's recommendation, pronounced an aggregate sentence of 234 years to life.  In the subsequent minute order, the trial court indicated an aggregate sentence of 235 years to life.  Because the circumstances of this case are unclear as to which sentence, between the oral pronouncement of the sentence as to each individual count, the oral pronouncement of the aggregate sentence, and the written record, is controlling, we remand the matter for correction of the oral pronouncement of judgment.

## DISPOSITION

The sentence is reversed.  The matter is remanded and the trial court is directed to correct the oral pronouncement of judgment.  In all other respects, the judgment is affirmed.

HILL, P. J.

WE CONCUR:

LEVY, J.

FAIN, J.*

---

*       Judge of the Fresno Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

21.